JAMES et al *v.* GULF REFINING COMPANY

In Banc. June 13, 1949.

(41 So. (2d) 2)

**O. M. Oates,** for appellants, the James heirs.

**McF**arland & **McF**arland, for appellees, the trustees.

788

**Alexander, J.**

Bill of interpleader was filed by appellee, the defendants, including appellants, the County of Jasper, the Trustees of the Heidelberg Special Consolidated School and others. There were no claims made by any of the parties except the James heirs and the Trustees of the Heidelberg School. The bill sought an adjudication of the title to certain funds impounded by appellee as proceeds from royalties accumulated from the production of oil from the lands involved. The answer of the James heirs sets forth their claim to the lands and the royalties therefrom, and prays for cancellation of any claims by the Trustees. The Trustees set up their claim to the royalties, and the ownership of the lands. From a decree in favor of the Trustees, the James heirs appeal.

Our decision is based upon a construction of a certain deed executed by H. A. James and Wife to the Trustees of the Claiborne Consolidated High School, which is as follows:

"In consideration of One Dollar and other good and valuable considerations, we convey and warrant to the Trustees and their successors in office of the Claiborne Consolidated High School the following described land to-wit:

"Beginning 7 chs. & 73 lks, North of S. W. Corner of SE¼ of NW¼, running North of said Land Line 8 chs, & 73 lks, to Heidelberg and Bay Springs Public Road,

thence East along said road 8 chs. & 82 lks, thence South to South Land Line of SE¼ of NW¼ 17 chs. & 48 lks. thence West 2 chs. & & 9 lks. thence North 7 chs.& 73 lks, thence West 6 chs, & 39 lks. back to point of beginning, containing 10 acres more or less. Section 35, twp. 1, Range 12 East, situated in First Judicial District, Jasper County, Mississippi.

"In case the above described land ceased to be used as School property the said land is to be reverted back to us, our heirs, executors or assigns.

"Given under our hand this the 13th day of September, 1916.

"H. A. James
"Victoria James"

The decree covers a tract of 7.65 acres which by agree· ment was held to be alone in present controversy. These lands are identified as follows:

"A certain tract of land described as beginning 7 chains and 73 links North of the Southwest Corner of SE¼ of NW¼, running North on said line 8 chains and 73 links to the Heidelberg and Bay Springs Road; thence East along said road 8 chains and 82 links; thence South 10 chains and 4 links or 663 feet; thence West 8 chains and 39 links or 554 feet, to the point of beginning, containing 7.65 acres, more or less, Section 35, Township 1 North, Range 12 East, First Judicial District, Jasper County, Mississippi."

The restrictive clause is the target of our examination. We therefore review the testimony pertinent to the issue of abandonment. The appellants executed a mineral lease to appellee in 1944. In 1945, the Trustees also executed a similar lease.

The original grantee in what is described as a deed of of gift was the Claiborne School Trustees. There was erected on the lands for school purposes in 1916 a two-story frame building for high school purposes. A few years later, there was erected a stone or concrete structure for use as a vocational or science department. There

was also erected a home for teachers. The frame building burned about the year 1928 or 1929. Thereupon, all high school pupils were transferred to, and enrolled in, the Heidelberg School. The Claiborne High School was consolidated with the Heidelberg School in 1928. The store or block building continued to be utilized for grammar school needs. The grammar school was abandoned and consolidated with the Heidelberg School in 1938. This was because of a lack of pupils, the necessity for reduction of the teaching staff to a single teacher, and because of inconvenient access due to poor roads and bridges. However, one of the teachers at the Heidelberg School continued to reside in the teacher's home in the Claiborne district for about one year.

It is asserted by appellee that the Claiborne facilities that remained were utilized for vocational classes, night instruction and town meetings, but the testimony that these meetings or classes were conducted by the Heidelberg Trustees and upon the Claiborne School lands is far from satisfactory.

About the year 1929, the Trustees of the Heidelberg School floated a bond issue in the amount of $65,000 to take care of the needs occasioned by the new access of pupils from the Claiborne School. Later, bond issues increased the total to between $150,000 and $200,000. Former patrons of the Claiborne School had for some time been urging consolidation with the Heidelberg School.

In 1940, appellants took possession of the Claiborne School property, locked the buildings, and placed the land upon the tax rolls. They have paid taxes under assessment to the H. A James Estate since that time. The last surviving teacher was requested by James to pay rent or move. She adopted the latter course and returned to Heidelberg School where she was teaching. There were other acts of dominion asserted by the appellants, including the fencing of the grounds, the placing

of locks on the buildings and their later destruction with salvage of materials.

There appears to have been no objection by the trustees of the Heidelberg School, or the board of supervisors, or any one else. These trustees undertook to dispose of the lands to the United States for camp purposes at the beginning of the late war, but upon learning of the claims by appellants they abandoned the project. One of the Heidelberg Trustees advised appellants in substance that they had abandoned the Claiborne School. It was in fact completely abandoned as a school in the year 1939. Appellees' contention is restricted to the assertion that although physically abandoned, they retained an attitude of dominion and that the abandonment was only under a temporary emergency. The record, including the concentration of all the pupils in the Heidelberg School, the fact of consolidation and the servicing of pupils in the old school district by buses from the new school, and the enlargment of the facilities of the latter through successive bond issues, belie this.

At no time was there any protest or proceeding against appellants' repossession of the property. Although the Heidelberg Trustees were unwilling to execute a quitclaim deed to appellants upon their demand, this is not as significant as the fact of the demand. Appellants have been in undisturbed and notorious possession of the lands since 1940. Deeds between the James heirs were placed of record, and, as stated, appellants executed a mineral lease thereon in 1944.

The legal question presented is whether the land had "ceased to be used as school property." We have already emphasized that physically and practically it was completely abandoned in 1939, and has not been since so used. Code 1942, Section 6373, does not militate against our conclusions. All dates, some variance appearing, are approximate.

In Twin States Realty Co. v. Kilpatrick, 199 Miss. 545, 26 So. (2d) 356, a delay by a grantor for six years to in-

sist upon a reversion was held to be belated. It is a pertinent analogy. In Buck v. Town of Macon, 85 Miss. 580, 37 So. 460, 461, a non-user for a period of two and a half years was held inadequate, yet the Court appropriately observed that there was "no averment that the property [had] actually been put to any other use." The point was raised by demurrer to the declaration. This case is therefore without force, since there is here no dispute as to the use and the unchallenged exercise of dominion by appellants promptly upon its abandonment.

Russell v. Town of Hickory, 135 Miss. 184, 99 So. 897, is without point. It involved a waiver by the owner of his right to reversion. Moreover, the lands were not in fact abandoned for school purposes, and an expression to that effect was noted upon the minutes of the school board.

Other cases cited by appellees fail to sustain their contention that the attitude of the trustees was so at variance with the overwhelming circumstantial evidence as to avoid a finding of abandonment. We have available no yardstick by which to measure abandonment by the calendar. If the intent to abandon is formed and executed, the reversion arises forthwith. There is no break in the continuity of title. The cases serve merely to illustrate the circumstances from which such intent may be deduced. The several periods during which these circumstances may be accumulated into a persuasiveness mass vary with each case. Abandonment in the instant case is fortified by objective and not subjective data.

The discovery of oil upon the disputed tract subsequent to the lease may have constituted a distracting circumstance, which appellees, with a solicitude for their duty to the educable children, could with difficulty ignore, and may, without infringement upon any laws of human nature, be deemed to have stimulated dormant mental reservations which rapidly assumed retroactive force. Yet their conduct, reasonable at the time, and forcibly

expressed both in action and non-action, is conclusive that the land "had ceased to be used as school property."

We are of the opinion that the learned chancellor was not adequately supported in his finding that a reverter had not become effective. In view of the fact that the decree was in favor of the Trustees of the Heidelberg Special Consolidated School District, there was no adjudication as to the respective interests of the James heirs. For this reason, the cause will be reversed and remanded for inquiry into, and ascertainment of, the interests of the several appellants in the lands and the impounded royalties.

Reversed and remanded.