BOARD OF SUPERVISORS *v.* NEWELL et al.

Feb. 4, 1952.

No. 38171 (56 So. (2d) 689)

**C. F. Cowart,** for appellant.

**Wall & Allen,** for appellees.

**Ethridge, J.**

The question presented is whether the record warranted the finding of the chancery court that certain lands origi-

nally conveyed with a reversionary clause to a now abolished school district had been abandoned for school purposes by the successor school district. It is claimed that the abandonment and reversion took place within three days after the new district was organized, and when the pupils of the former district began attending a different school building ten miles away.

The Woodrow Wilson Consolidated School District of Franklin County, Mississippi, was organized in 1929. On October 23, 1929, A. Hirsch executed the following deed: ''For and in consideration of the sum of ten dollars cash in hand paid, the receipt whereof is hereby acknowledged, I hereby sell and convey unto D. J. Coleman, George W. Ezell, C. H. Arnold, John Mullins, and Pink Stokes, Trustees of the Woodrow Wilson Consolidated School of Franklin County, Mississippi, and their successors in office the following described parcel or tract of land, to-wit: . . . (Here follows a description of the property) . . . This conveyance is made upon the further consideration that said hereinbefore described land shall revert to the grantor herein, his heirs and assigns when it fails to be used for school purposes. Said lands situated, lying and being in Franklin County, State of Mississippi.''

In 1943, Hirsch conveyed his reversionary interest under the above deed, along with 160 acres of land, to appellees W. A. Newell and wife, Mrs. Edith Newell.

The Woodrow Wilson District issued bonds in 1929, built a school building on the fifteen acre tract conveyed by the above deed and in later years added other buildings to the property. At the time of the suit, the property contained a classroom building, of a size not described in the record, a five room and bath (unfinished) teacher's home, and a lunch room; and the District had no bonded indebtedness.

Prior to the summer of 1948, the citizens in that District had become concerned about the gradual and continuing reduction in the number of children attending both the high and grammar departments of the Woodrow Wilson

School. After public meetings it was decided to consolidate the lands in the Woodrow Wilson and Bude Separate Schools Districts, and to create a Bude Consolidated School District. In the summer of 1948, twenty-five percent of the qualified electors of the Bude Separate School District petitioned the Mayor and Board of Aldermen of the Town of Bude to abolish that district, stating that the purpose of such abolition was to form a new consolidated school district. An election on July 20, 1948 resulted in a favorable vote, and on August 23 the Mayor and Board ordered the abolition of the Bude Separate School District effective August 31, in order to carry out the proposed consolidation.

On September 3 the Franklin County School Board executed an order adjudicating that a majority of the qualified electors of both the Woodrow Wilson and Bude Separate School Districts had petitioned the County School Board to create a new consolidated school district, consisting of the territories of the two prior districts; that the State Department of Education had recommended the creation of such a new school district; that the site proposed for the location of the school house of the new school district, in the Town of Bude, was reasonable and accessible to the entire district. The order further adjudicated that it was necessary that the Woodrow Wilson District be abolished and that all its property be transferred to the new district "for school purposes". The order created a new district named Bude Consolidated School District of Franklin County, Mississippi, which contained the territory of the two earlier districts, the Woodrow Wilson and the Bude Consolidated School Districts; and it adjudicated that all of the buildings and land of Woodrow Wilson were thereby transferred to the new district "for school purposes".

Miss. Code of 1942, Section 6373, provides that when a consolidated school district has been formed out of prior school districts "any property or funds of former districts shall become the property and funds of the consoli-

dated school district . . . comprising said former school districts. . . ."

The new Bude Consolidated School District was created by the above order on Friday, September 3, 1948. On Monday, September 6, all of the school children in the former Woodrow Wilson District were picked up by school busses and transported to the site of the school house of the new district in the Town of Bude, which is about ten miles from the site of the old Woodrow Wilson School. The school plant of the former Bude Separate School District is used for the same purpose for the new district. On the same day and after he had seen the school children entering the school building in Bude, appellee, J. O. Newell, acting for his son, W. A. Newell, and Mrs. Edith Newell, the other appellees, claiming under their reversionary interest in the quoted deed, took possession of the fifteen acres and of the buildings on that property. Appellees' position is that under these circumstances the Woodrow Wilson School property had failed to be used for school purposes, that the school authorities had abandoned it for those purposes, and that, therefore, the condition subsequent stated in the 1929 deed came into effect and vested them with the entire title to the fifteen acres and the buildings affixed to the realty. Appellees make no claim to the personal property and school equipment remaining in the buildings; most of it was removed by the new district at or shortly after appellees' reentry.

In October 1948, L. H. Emfinger and other trustees of the abolished Woodrow Wilson District and of the new district, and also in their capacities as taxpayers of these districts, filed an action in the Chancery Court of Franklin County seeking to oust the present appellees from the property, but the chancery court in April, 1949, sustained a demurrer to that bill on the ground that the complainants had no legal right to bring the suit. This action was taken after the court had heard oral testimony on the merits.

The present action was filed in May, 1949 by the Board of Supervisors of Franklin County, appellant, against appellees W. A. Newell and wife Edith Newell, and W. A. Newell's father, J. O. Newell. The bill of complaint asked that appellees be removed from the premises, that a reasonable rental be fixed for the use of the property, for damages for the appellees' trespass, and that appellees be restrained from any further trespass on the property. Appellees' answer denied the allegations of the bill and claimed under the reversionary clause in the 1929 deed. It was stipulated that the new district was properly created and the old districts were properly abolished; that the school house at Bude is large enough to accommodate all of the school children of the new district; that the Woodrow Wilson property contained a school building, a teacher's home, and a lunch room, and that it continued in operation from 1929 up until the summer of 1948. It was further agreed that the scholastic year opened in the new district at the school building in the town of Bude on September 6, 1948, and that there was no school open at the old school house on the Woodrow Wilson property; that the testimony taken in the earlier case of Emfinger v. W. A. Newell should be used as the testimony in the present case; and that the new Bude Consolidated School District, comprising the two old districts, is now conducting a school in the Town of Bude and has been in continuous operation since it opened on September 6, 1948, accommodating all of the children from the two old districts who are now in the new district.

A number of witnesses testified for both sides. The final decree of the chancery court adjudicated that the testimony was insufficient to sustain the bill of complaint as it related to the title to the land and dismissed the bill; that defendants made no claim to the personal property in the school buildings, and ordered defendents to deliver any remaining personal property in the buildings to complainants. On this appeal appellants argue that the evidence was not sufficient to support the finding of the

trial court that the land had been abandoned for school purposes and that the title had reverted to appellees; and that therefore the trial court should have allowed them the requested relief. We think that appellants are correct in this position.

 A condition, when relied upon to work a forfeiture, is construed with great strictness. The rule is stated in 47 Am. Jur., Schools, Sec. 69, as follows: "Where land is granted for school purposes, the question frequently arises as to whether the condition of the conveyance has been broken with a resulting reversion or forfeiture. The general rule is that a construction involving a forfeiture is not favored, on the theory that since the deed is the act of the grantor it will be construed most strongly against him." See also 19 Am. Jur., Estates, Sec. 65; 4 Thompson, Real Property (1940 Ed.), Secs. 2096-2097. Another basic principle in interpreting conditions subsequent is that the party charged with the performance of the duties upon which the condition subsequent is dependent is entitled to a reasonable time within which to perform the stated conditions, that is, in the present case a reasonable time within which to determine whether to use the property for school purposes. And what constitutes a reasonable time within which to perform acts contemplated by a conveyance depends upon the subject matter, the nature of the act to be performed, and the situation of the parties. 4 Thompson, Real Property, Secs. 2100-2101. Here appellees took possession of the fifteen acres of the old Woodrow Wilson School within three days after the new district had been organized. It is manifest that the trustees of the new district did not have a reasonable time within which to decide whether the new district should continue to use the Woodrow Wilson property for school purposes. This is the major factor in our determination that the condition subsequent had not occurred at the time of appellees' attempted reentry.

The Chancery Court's finding that in fact there had been an abandonment of the property for school purposes is without any substantial evidence to support it and is manifestly wrong. To sustain appellees' position would necessitate the implication of an abandonment of the property for school purposes, but it is well established that a forfeiture will not be implied unless the evidence to that effect is clear and convincing. 19 Am. Jur., Estates, Sec. 65; 4 Thompson, Real Property, Secs. 2044, 2063, 2096; 47 Am. Jur., Schools, Sec. 69. Furthermore, the person asserting the existence of a fact serving as the basis of a condition subsequent has the burden of proof on that issue. 14 Am. Jur., Covenants, Conditions and Restrictions, Sec. 130. The term "abandonment" is here used in the general sense of intentional relinquishment of use of the property for school purposes, but the general principles of burden of proof in technical "abandonment" are analogous; and it is well established that an abandonment must be made to appear affirmatively by the party relying thereon, and that he has the burden to prove the same by clear, unequivocal and decisive evidence. 1 Am. Jur., Abandonment, Sec. 17.

 Abandonment of property for the stated purpose involves both intent and acts. An intent may be inferred from actions. But the act of abandonment is a physical fact, reflected by acts and expressions indicating intent. Appellees rely primarily on the facts (a) that for some time prior to September 6, it was recognized that, because of the encroachments of both government and private forest lands in the district, Woodrow Wilson would have to consolidate with some other district; (b) that on September 3 the Woodrow Wilson District was abolished and the new district created; and (c) on September 6 all of the students of the old district were taken to school in Bude, ten miles away. However, these facts affect primarily the organizational basis of the school district in that territory. They are circumstantial evidence of abandonment of the Woodrow Wilson prop-

erty, but become of only slight probative value on this issue when considered in the light of the other evidence in the record, and are certainly inadequate to sustain appellees' burden of proof on this issue.

H. G. Godbold testified that he was superintendent of the new Bude Consolidated School District, that "there had been some talk, as far as the trustees to place a man in there;" that Mr. Haire, an engineering teacher, was to be placed in the teacher's home at about the time school started, and that he would have moved there if it had not been for the lawsuit; and that Mr. Haire had stated to him that he had intended to move into the teacher's home prior to the litigation. It appeared that the new Bude School did not have a teacher's home, and that some of the teachers lived in Bude, and others lived anywhere they could find living quarters. The school closed its term in April, 1948, and the teacher who had been living in the teacher's home left to go to summer school, and as a result the teacher's home was vacant that summer. The County Superintendent of Education, W. E. Boggan, testified that the Bude School has a forestry course and that the fifteen acre tract of the Woodrow Wilson property would be suitable for a forestry program. Boggan also testified that the officials and others who had planned the new consolidated school district thought that "they would still have the use, of course, of the set-up" of the Woodrow Wilson School, and that the trustees had no intention of abandoning the school property.

Of particular significance is the order of the Franklin County School Board of Friday, September 3, 1948, which created the new Bude Consolidated School District. That order adjudicated and directed that "all buildings, lands, and equipment formerly owned by Woodrow Wilson Consolidated School District be transferred to the new Bude Consolidated School district *for school purposes* . . ." Section 3 of the same order therefore directed: "That all the buildings, lands, and equipment of Wood-

row Wilson Consolidated School District be and the same is hereby transferred to the new Bude Consolidated School District *for school purposes.*"

This order of the Franklin County School Board, dated September 3, is a clear adjudication that the county school board intended that the Woodrow Wilson property should be used in the future also "for school purposes."

The record does not reflect whether the county superintendent of education appointed temporary trustees for the new district on the date it was created, September 3, but even assuming that he did, we nevertheless do not think that the trustees thereof had a reasonable time to determine the purposes, if any, for which the old Woodrow Wilson property would be used, before the appellees undertook to exercise a power of reentry on the succeeding Monday, September 6, three days after the Bude District had been created. J. O. Newell testified that he took possession of the Woodrow Wilson property on Monday, September 6, the first day of the school term in the new district. He said: "I got in my car, drove to Bude, and seed the children go in the school house. They picked up my grandchildren at my house, and when they had all the children over in the high school house at Bude, I thought now is the time to move in. I moved in— my boy, I didn't. He and his wife came up from New Orleans and stayed a month."

Code 1942, Sec. 6373, provides that when a new consolidated school district has been formed out of other districts, any property of the former districts shall become the property of the new district. It then places upon the board of trustees, with the approval of the board of supervisors, the responsibility of making such use or disposition of the property of the old districts "as may be deemed for the best interest of the consolidated school . . ." Hence both the county board of supervisors and the board of trustees of the school district have the responsibility under this statute of determining what

the best interest of the district dictates shall be done with the property of the prior districts. Code Sec. 6378 emphasizes this by providing that trustees of a school district are "custodians of the school property". They have the responsibility and the right to have an opportunity of determining what shall be done with that property. We do not think that the trustees of the new district had that opportunity here, where the new district was created on Friday, September 3, and appellees attempted to reenter and claim their reversion three days later, Monday, September 6. Even assuming that temporary trustees had been appointed on the day the district was created, they would not have had a reasonable opportunity to determine whether they wanted to continue using the Woodrow Wilson property for school purposes. And they have not had that opportunity. This conclusion is strengthened by the clear adjudication of the county school board in its order of September 3 creating the new district that the property of the old district was thereby transferred to the new district "for school purposes". James v. Gulf Refining Company, 1949, 206 Miss. 781, 41 So. (2d) 2, 4, is not applicable here, because over a year's period elapsed after the new district was created before the reversioners retook possession. The school board in that case had adequate time to determine whether they desired to retain the old district's property for school purposes.

In prior cases this court has consistently required a clear showing of ██ abandonment of publicly owned property by public officials before giving effect to a reversionary clause. In Buck v. City of Macon, 1904, 85 Miss. 580, 37 So. 460, it was held that a deed conveying land to trustees for school purposes was not forfeited by a non-user for two and a half years; however, that deed did not expressly provide for a reversion. Poitevent v. Board of Supervisors of Hancock County, 1881, 53 Miss. 810, involved a deed to the county "for county purposes". The county erected on the land a courthouse

and jail but later removed the county seat to another town. In refusing to declare a forfeiture to the grantor, the court said there was nothing in the deed from which it could be inferred that it was the intention of the grantor or grantee to devote the property to any special county use, and that the mere removal of the county seat was not evidence of an intention on the part of the county to abandon the property or to devote it to a purpose other than county purposes. It was stated that in the absence of proof to the contrary, the court must presume that it was the purpose of the board of supervisors to use the property in such manner and for such purposes as will preserve it to the county. In the instant case the deed was for school purposes, and not solely for the site of a school building in use as a school building.

In Miller v. Board of Supervisors of Tunica County, 1890, 67 Miss. 651, 7 So. 429, 430, a lot was conveyed to a county "for the use of the county" and a courthouse was built thereon. Later the county seat was changed to another town and the plaintiff urged that the county had abandoned the lot and that title had reverted to him. The court held that: "The mere removal of the county-site is not sufficient evidence of an intention of the county of Tunica and the town of Austin to abandon the property, or to devote it to any other than county and town purposes, as was said in Poitevent v. Hancock County, 58 Miss. 810."

In Russell v. Town of Hickory, 1924, 135 Miss. 184, 99 So. 897, the land was deeded for the purpose of operating a school and "when abandoned for educational purposes" the title should revert back to the grantor. Several years later the town erected a new school building on a different lot. The Board of Aldermen passed an order "declaring their intention not to abandon the old school site for educational purposes, but that it was their purpose and intention to reserve it for playgrounds and for a place of meeting for the trustees of the school, and for the teachers of the municipality, and for a meeting place for teachers of the county, beat and municipality."

Prior to that order, the operation of the school was also transferred from a chartered institution to a municipal separate school district. When the new school was constructed, appellant claiming under the reversionary clause fenced up the land and excluded the students. The court held that appellant had by an instrument executed by him waived the reversionary clause, and also that under the stated circumstances there was no breach of the clause even if there had not been a waiver. The order of the board declaring its intention to use the old school lot for playgrounds and a place of meetings for the trustees and teachers, was a declaration of intention to use the land for a purpose consistent with that specified.

This is in accord with the general rule that ██ a forfeiture is not incurred by the use of land for another purpose consistent with the purpose specified. 4 Thompson, Real Property, Sec. 2104. For example, in McCullough v. Swifton Consolidated School District, 1941, 202 Ark. 1074, 155 S. W. (2d) 353, the deed was to the school district "for school purposes only", with a reversionary provision to plaintiff. Later the grantee district was consolidated with a different school district, and defendant became the owner of the property. In 1941 defendant began tearing down the school building, and plaintiff sued to enjoin it from doing so, claiming defendant had abandoned the property for school purposes. There was testimony that the directors of the school district intended to build a waiting station for pupils on the property, and that the old building had been used for that purpose since the consolidation. The Arkansas Court said: "This evidence clearly shows that said property had not been abandoned for school purposes. Now, the conveyance provided the conditions on which the property would revert to the grantor. It could 'be used for school purposes only,' and if the District should abandon same at any time, it would revert. If appellant intended to provide in his deed that the property should revert in the

event no school was conducted there, or if it should be abandoned as a school, he chose inept language to express his purpose. We think the trial court correctly held that the use to which appellee proposes to put the property is not in violation of the limitations in said deed and that appellee has not abandoned it for school purposes although it has done so as a school." See also Koonz v. Joint School District No. 4, 1950, 256 Wis. 456, 41 N. W. (2d) 616.

In Gage v. School District No. 7, 1887, 64 N. H. 232, 9 A. 387, the condition in the deed provided that the land should be used for a public school and should revert to the grantor when it ceased for two years to be used for such purposes. Two years passed without a school being built on the premises, and no other use was made of the property. The court held that the non-user was not "so unreasonable in duration as to defeat the purpose of the grant" and there was not an abandonment. In Mills v. Evansville Seminary, 1883, 58 Wis. 135, 15 N. W. 133, the deed was to the grantee for a seminary building and was so used for several years, but in 1874, owing to a lack of funds and patronage, the seminary ceased to be maintained. In 1876 the grantee, by a void resolution, undertook to convey the land to a private corporation, who in 1879 reconveyed it to the grantee seminary. In 1880 the buildings were repaired by the seminary and the school was reopened over the objections of the grantors. The grantors brought an action to recover the land. On appeal the suit was dismissed. The court observed that the parties to the instrument undoubtedly expected that there would be interruptions in the school at various times and for various reasons, that there had been no total abandonment of the property, and that the failure to maintain the school resulted from causes which the seminary could not control. See also Rowe v. City of Minneapolis, 1892, 49 Minn. 148, 51 N. W. 907; 4 Thompson, Real Property, Secs. 2106, 2110.

In brief, forfeiture clauses with a reversion of the present type are strictly construed. Mere non-use

with nothing more is not sufficient evidence of complete abandonment. ██ ██ The trustees of the new school district had arranged with an engineering teacher at Bude to live in the teacher's home on the Woodrow Wilson property. Principal Godbold also testified that the school authorities had no intention of abandoning the property for school purposes. On September 3, the County School Board's order creating the new district directed that the Woodrow Wilson property be transferred to the new district "for school purposes". It expressly adjudicated on September 3 that it intended to use the property of the old district for school purposes. The record does not affirmatively reflect that temporary trustees for the new district were appointed, but assuming that they were appointed on September 3, the same day the new district was created, we think that appellees' attempt to reenter and possess the property three days later, Monday, September 6, did not allow the trustees a reasonable time within which to decide whether the new district should continue to use the Woodrow Wilson property for school purposes. And in the next month, October, 1948, the trustees and individual taxpayers of the old and new districts filed the original action against appellees, seeking to oust them from the property and charging that appellees had prevented the Bude District from using it. The chancery court erred in holding, in effect, that the Bude Consolidated School District had abandoned the Woodrow Wilson property for school purposes. We think the evidence in the record indicates otherwise, and particularly so in view of the terms of the order of the Franklin County School Board of September 3, of the fact that appellees undertook to reenter and possess the property within only three days after the new district was created, and of the statutory obligations of the trustees of the Bude District.

The decree of the chancery court is, therefore, reversed, and judgment is rendered here adjudicating that appellees are trespassers upon the property in question and

have been since they took possession of it on September 6, 1948, and injunction shall be issued directing appellees to vacate the property and to place appellants in full possession thereof, and restraining appellees from interfering with appellants' use of the property under the deed, as prayed for in the bill of complaint. The case is remanded to the chancery court for a hearing on the prayer in the bill for compensatory damages to appellants, if any. We do not think that the record warrants punitive damages. This is without prejudice to the rights of appellees under the 1929 deed in the event the school authorities abandon in fact the use of the property conveyed in that deed for school purposes.

Reversed and decree rendered for appellants as to title to property, trespass issue, and injunctive relief, and remanded on issue of compensatory damages only.

**McGehee, C. J.**, and **Lee, Kyle**, and **Holmes, JJ.**, concur.