HAWAIIAN COMMERCIAL AND SUGAR COMPANY *v.* COUNTY OF MAUI, A POLITICAL SUBDIVISION OF THE STATE OF HAWAII.

No. 4323.

MAY 11, 1964.

TSUKIYAMA, C.J., WIRTZ, LEWIS AND MIZUHA, JJ., AND CIRCUIT JUDGE TASHIRO, IN PLACE OF CASSIDY, J., DISQUALIFIED.

OPINION OF THE COURT BY MIZUHA, J.

On September 6, 1938, plaintiff-appellee conveyed to defendant-appellant a fifty acre rectangular parcel of land for school purposes. The deed contained the following clause:

"If at any time within the period of twenty-one (21) years after the date hereof the Grantee shall

cease to use the said premises or any part thereof for school purposes the Grantor, its successors or assigns, shall have and may exercise the first and exclusive right and option to repurchase from the Grantee or its successors the whole of said premises, should the Grantee cease to use the whole thereof for school purposes, or such part thereof as shall not be used for school purposes if the Grantee shall cease to use only a part thereof for school purposes, at the rate of one hundred dollars ($100.) per acre plus the value of the improvements thereon to be ascertained as hereinafter provided; * * *."

Shortly after the conveyance, a fence was built along the northern perimeter of the parcel. Pursuant to an agreement between the parties, the County cleared the area of lantana shrubs, and the plaintiff constructed the fence. The expenses of putting in the fence were divided equally between the parties. The purpose of the fence was presumably to prevent cattle from straying onto the area. All that remained of the fence at the date of the suit was one redwood post.

Sometime between 1939 and 1941, Henry Perrine Baldwin High School was constructed. Prior to 1941, the area north of the school site was undeveloped. Plaintiff in 1941 developed this area into Puuone Subdivision. At the time this subdivision was planned, there was no road leading to the subdivision across any portion of the school lot. Access to this subdivision was proposed to be made through a road at the northernmost edge of the subdivision called Skyline Boulevard. Skyline Boulevard, however, was never built. Instead, to provide access to this subdivision, Liholiho Street was constructed across the northwestern corner of the fifty acre parcel, thus severing 1.6786 acres from the main school acreage. Liholiho Street is the sole means of access from the main highway on the

Wailuku (west) side to the subdivision. There is no evidence as to who was responsible for the construction of the road.

Plaintiff in 1958 wrote defendant declaring its intent to exercise its option to repurchase said 1.6786 acres of land on the ground that "that remnant has never been occupied, used or developed by the County in any way, * * *." Plaintiff tendered $168.00 for this area. The tender was not accepted by the County but was held in its possession.

On September 4, 1959, suit was instituted by the plaintiff for specific performance on 1.6786 acres of the 50 acre parcel of land, this 1.6786 acre parcel being described as Area "A". At the time of the trial there were several other undeveloped areas in the Baldwin High School lot. In addition to Area "A", located in the northwestern corner of the lot, there was Area "B", also an undeveloped area, located adjacent to Area "A" and physically separated from Area "A" by Liholiho Street. Area "C", also an undeveloped lot, is located at the southeastern corner of the school parcel.

The trial court found that:

"* * * The evidence shows that defendant took possession of the entire 50 acre lot, fenced it and constructed Baldwin High School thereon. Since the construction of Liholiho Street, [the parcel in question] has not been actually and physically occupied. Except for 'discussion' and 'talk' there are no plans for making any use of this area. * * * 'Discussion' and 'talk' from unidentified officials furnishes no evidence to rebut the apparent abandonment of this land for school purposes.

"To the contrary, defendant's Exhibit 'A' shows a plan for the enlargement and development of the area adjoining the original high school lot on the easterly (makai) side. The records of this Court show

that this parcel of land was recently acquired by the County through eminent domain proceedings against the plaintiff here (County of Maui v. Hawaiian Commercial and Sugar Co., Ltd., Civil No. 202). There appears not only no actual physical use nor plans for its use, but also a clear intent to abandon Area 'A' for any school purpose."

The deed gave the plaintiff the option to repurchase the land or any part thereof if "* * * the Grantee shall cease to use the said premises or any part thereof for school purposes * * *." The intent of the parties, as expressed in the deed, was that the land should be used only for school purposes. The grantor, by the plain language in the deed, reserved an option to repurchase Area "A" predicated upon the County's ceasing to use the premises for school purposes. *Gange* v. *Hayes,* 193 Ore. 51, 237 P.2d 196. Compare *Alamo School District* v. *Jones,* 182 Cal. App. 2d 180, —— P.2d ——, 6 Cal. Rptr. 272. We do not have here the question of whether there was a total failure to use the lot for school purposes as in *Trustees of Union College* v. *City of New York,* 173 N.Y. 38, 65 N.E. 853. It is obvious that the grantor meant that the option to repurchase the land or portion of the land would be exercisable if the land or portion thereof were devoted to some use other than school purposes or there was a definite cessation of use and abandonment within the 21 year period.

The acts asserted by plaintiff to show cessation of use and abandonment of the 1.6786 acres are non-use, physical separation of the parcel in question from the main school parcel by Liholiho Street, lack of plans for development of the area, and disappearance of the old fence.

Defendant admits that Area "A" has never been physically occupied but denies that there has been a cessation of its intended use for school purposes or that it has been

abandoned. The fence was presumably built for the purpose of keeping cattle from straying on to the school property. Since the adjacent area has been a residential subdivision since 1941, there is no longer any need for a fence.

From the mere fact of physical separation from the main acreage by Liholiho Street, it cannot be concluded that there has been a cessation of use or an intent to abandon Area "A". It is common knowledge that there are many schools, colleges and universities whose grounds are dissected by streets and roads. It is apparent from the evidence that Liholiho Street was constructed for the benefit of the plaintiff.

Moreover, it cannot be said that lack of definite blueprint plans for development of Area "A" is evidence of cessation of use for school purposes or of an intent to abandon the premises. "It is a matter of common knowledge that park development in a county or municipality is a long and continuous project. * * * So long as the county is moving in the direction of the objective abandonment should not be permitted to defeat the deed." *Dade County* v. *City of North Miami Beach,* 69 So. 2d 780, 783 (Fla.). Development of a high school campus is often a long and continuous project. As the population increases, the size of the school will increase and physical occupancy of the campus will be proportionately greater. There is evidence that the County had plans for putting up either a pump or a water tank in Area "A". This corner was also considered as a possible site for the school caretaker's residence. Development of detailed blue-print plans is always dependent upon the availability of appropriations and the urgency of the particular improvement.

Plaintiff argues that "abandonment in technical sense is not at issue here" and that the only question is "whether or not area 'A' was being used for school purposes within the meaning of the option clause in the 1938 deed" and

cites *Putney* v. *School District,* 215 Wis. 539, 255 N.W. 76; *Craig* v. *Unknown Heirs,* 358 P.2d 835 (Okla.) ; and *McDougall* v. *Palo Alto Unified School District,* 212 Cal. App. 2d 422, —— P.2d ——, 28 Cal. Rptr. 37.

In the *Putney* case, *supra,* the area involved was the entire school site of ½ acre on which there was a school building. It was conveyed to the school district in 1876. In 1930, the school district purchased a 3 acre site about ¼ mile distant, erected a new school building, and took possession of the new building in 1931. The court stated *supra* at 540, 255 N.W. at 77:

"It is strenuously argued here that * * * the premises were not in fact abandoned. This argument is based upon the testimony of school officers to the effect that they did not intend to relinquish their interest in the property; that the building was being used for storage purposes, and that its use for playground purposes was contemplated; that the school district kept insurance upon the property.

"The deed was quite apparently drawn by someone who had no knowledge of conveyancing. While the language employed is not technical, if it does not mean that when the grantee ceased to use the premises for school purposes, it should revert to the grantee or his heirs, it means nothing. It is the use to which the property is put, not the intention of the school officers, which governs. If it were construed as defendants claim it should be, that is, that the property should be owned by the district as long as the district wanted it, the grant would be unconditional."

In the *Craig* case, *supra,* the area involved was the entire school site on "an acre of land with a school house, or building, and teacherage thereon, * * *." It was conveyed in 1903. In 1957, the use of the school building was discontinued and students transferred to adjoining school

districts. The school district conceded at the trial "* * * that school class work had long since been discontinued on the premises * * *" but contended that there had been no abandonment of the property for school purposes because the discontinuance of the school was not voluntary, but was forced upon School District No. 37 by statute, and because the premises had been used for storage purposes. The court in following the *Putney* case stated *supra* at 840:

> "* * * [T]here is no question, on the basis of the undisputed facts, that the land—despite its variety of past uses—has not been used for the site of a school, or school house, for nearly two years or more. * * * [T]he evidence shows no definite intention or contemplation, to use the land for any purpose connected with maintaining a public school on it. * * *"

In the *McDougall* case, *supra,* the area involved was an entire school lot on which there was a school building. The lot was conveyed in 1876. In 1940 the school building was demolished. The court stated *supra* at 439, ——— P.2d at ———, 28 Cal. Rptr. at 47:

> "We need not explore the niceties of whether the school board did or did not formalize and record an intent to abandon the property. Admittedly no school structure of any kind has been on the property since 1940 and since that date the school district has failed to use the property for any school uses or purposes. Two separate provisions in the deed therefore operate to bring the estate to an end. First, the deed terminates such estate 'whenever * * * (the school district) shall abandon the premises.' In our view, such abandonment was not obviated by an intent to one day use the property, no such actual use having been made of it for almost 20 years. Examined in the context of the entire document, we think that the grantor used

'abandon' in the sense of 'nonuse.' But apart from such provision, a second clause provides for termination—'or (whenever the school district) shall fail neglect or refuse to use said premises for common school uses and purposes * * *.' Thus, even if we should accept the court's conclusion that the district never *abandoned* the land, it is beyond dispute that for almost 20 years it failed to *use* it for school purposes. * * *"

*Putney, Craig* and *McDougall* cases, *supra,* are clearly distinguishable on the facts. They all involved the entire school site on which school buildings had been erected, and the later removal of the schools to new sites. In *Putney* and *Craig,* the old schools were being used for storage purposes whereas in *McDougall* the school building was demolished. In such cases, mere non-use of the school site may be sufficient to terminate the estate, but we are not impressed by the argument that abandonment in the technical sense is unnecessary when applied to 1.6786 acres of a 50 acre school site on which there are in existence and use numerous high school buildings and other school improvements.

Where a claim is asserted, as in this case, that there has been a cessation of use because there has been no physical occupancy of a portion of the school premises, we hold that there must be sufficient evidence to show abandonment by the County of Maui. "Abandonment is a question of intent and he who asserts it, has the burden of proving it. Nonuse is only evidence that may or may not point to abandonment. * * *" *Dade County* v. *City of North Miami Beach, supra* at 783. See *Board of Supervisors* v. *Newell,* 213 Miss. 274, 56 So. 2d 689; *Clark* v. *Jones,* 173 Ore. 106, 144 P.2d 498. "* * * [T]he act of abandonment is a physical fact, reflected by acts and expressions indicating intent." *Board of Supervisors* v. *Newell, supra* at 282, 56 So. 2d at 693.

494

The trial court, after taking judicial notice of Civil No. 202, Second Judicial Circuit,[1] an eminent domain proceeding wherein the County of Maui acquired 31.788 acres of land adjacent to the school site, found that Exhibit "A" thereof shows a plan for the enlargement and development of the area adjoining the original high school parcel, and concluded that there was a clear intent to abandon Area "A" for any school purpose. The complaint filed in the eminent domain proceeding to acquire the adjacent area states "that the purchasing, acquiring, condemning and holding of the above mentioned piece, parcel or strip of land, * * * in fee simple, is for a public use and purpose, to-wit, for the construction of the Wailuku War Memorial-Convention Gymnasium in Wailuku, County of Maui, State of Hawaii, for which public use and purpose the said piece or parcel of land, * * * is necessary." Nowhere is it mentioned that the area was being acquired for school purposes. Nowhere is it stated that the area was being acquired to provide a gymnasium for the Henry Perrine Baldwin High School. Exhibit "A" was merely a "proposed layout of Wailuku War Memorial-Convention Gymnasium Lot." While the County may permit the school to utilize the gymnasium for its physical education programs, there was nothing in the eminent domain proceeding or in Exhibit "A" to indicate that the land was acquired solely for the students' use in connection with school athletics and activities.

The findings "that the defendant has within said twenty-one year period 'ceased to use' " Area "A" for school purposes, and that there was "also a clear intent to abandon Area 'A' for any school purposes" are clearly erroneous.

The judgment is reversed.

[1] This suit was filed on August 25, 1959. Judgment was entered March 16, 1960, four months after the expiration of the 21-year option period.

*Harold L. Duponte,* County Attorney and *Kase Higa,* Deputy County Attorney for defendant-appellant.

*Pratt, Moore, Bortz & Vitousek (Allen M. Stack)* for plaintiff-appellee.