379 So.2d 931 (1980)
Chester K. BURNHAM
v.
CITY OF JACKSON, Mississippi.
No. 51672.
Supreme Court of Mississippi.
February 13, 1980.
*932 Watkins & Eager, Clifford B. Ammons, James A. Becker, Jr., Jackson, for appellant.
John E. Stone, Jackson, for appellee.
Before SMITH, P.J., and SUGG and BOWLING, JJ.
SMITH, Presiding Justice, for the Court:
Chester K. Burnham appeals from a decree of the Chancery Court of the First Judicial District of Hinds County dismissing his bill in which he sought to remove as a cloud upon his title the claim of the City of Jackson to be the owner of certain real estate.
In 1935 Kennington Investment Company had conveyed the property to the City of Jackson (with other parcels) for a recited consideration of ten dollars and other valuable considerations, the deed concluding with this provision:
Said parcel of land is only to be used for park or other public purposes and in the event said parcel is not used for said purposes or is ever used for private or commercial purposes, then the title thereto is to revert to the grantor, its successors or assigns.
On June 30, 1978, Burnham obtained a deed from Kennington purporting to convey the property to him. The City of Jackson declined to recognize Burnham's claim of ownership and Burnham filed this suit.
In the lower court, by his bill and testimony as a witness, Burnham asserted that the City of Jackson "had done nothing" to make the small tract a park and that, therefore, title had reverted, and, as Kennington's assignee, was vested in him. In support of this thesis, several persons were offered as witnesses whose testimony tended to indicate that virtually no improvements had been made by the City, and except for cutting the grass from time to time that the land had remained in much the same condition as it had been when it was conveyed to the City.
The City of Jackson countered with testimony that various municipal plans for the improvement of the "park" had been made but had not been fully implemented because of priorities which had preempted the funds needed for the purpose. A concrete sidewalk had been built along the southern edge which served the property as well as Poplar Street. Several photographs disclose that a semicircular gravel road has been constructed around the northern perimeter, and fences erected along the sides of ditch. A bench or so has been placed on the lot and a sign designating the property as Belhaven Park erected. The property has been used from time to time by children and other members of the public, although these occasions were somewhat rare.
It is conceded by Burnham that the property is and has been open and available to the public and that the property has not been used for any "private or commercial purposes."
Various city projects for the further landscaping and development of the property were related, and there was introduced a detailed map and plan, prepared by the City Engineer in 1976, covering a proposal for the planting of shrubs and the laying out of *933 walks. The property has not, since its conveyance to the City, been assessed for municipal taxes.
It appears to be the position of appellant that a tract of land cannot be a park unless it is made into a "playground," with playground equipment, or into a picnic ground, with tables, benches and the like. Webster's New International Dictionary, Second Edition (1950), however, contains this definition of a park:
(4) An area of land reserved from settlement and maintained in its natural state as a public property; as Yellowstone National Park; Yosemite National Park.
Webster's New Collegiate Dictionary (1977), gives these definitions of a park:
(2 a): A piece of ground in or near a city or town kept for ornament and recreation.
(b): An area maintained in its natural state as a public property.
In City of Greenville v. Thomas, 241 Miss. 633, 131 So.2d 659 (1961), property had been conveyed to the City of Greenville to be used for the purposes of a park. The City built a street on it and granted an easement to a power company to construct and maintain high voltage power lines across it. These actions were challenged as breaches of the condition in the deed that it was to be used only as a park. All Justices agreed that the property was, indeed, a park, but Justice Rodgers dissented from the conclusion of the majority which upheld the right of the City to grant the easement for power lines, basing his dissent upon the inherent danger that would result to persons using the park. In his dissent (on this restricted point) Justice Rodgers had occasion to define a park:
The average citizen thinks of a park as: "... `a pleasure ground  a place of enjoyment and recreation and for the public generally,' eliminating `all idea of business or administrative uses, or enjoyment by a limited number of people'. A similar test has been applied for beach front, when turned into park areas. Parks have been looked upon as `set apart and maintained by the cities as places conducive to the health, pleasure, comfort and amusement of the public. An enjoyment of fresh air and sunshine, and also the grass, flowers and trees, is most important in securing the social, physical, and moral well being of the people, and parks, as a means of providing these bounties of nature for all the people, have come to be considered as essentially necessary.' Humphreys v. San Francisco, 92 Cal. App. 69, 75, 268 P. 388, 391 (1928)." Rhyne's Municipal Law, p. 465.
Parks are sometimes called Promenades because these plots of ground are places where natural plant life is permitted to grow, and people are accustomed to walk. They are sometimes called commons; because they are used by the public.
(131 So.2d at 665).
This Court has defined conditions subsequent inserted into a deed as those which may operate upon an estate already vested and render it liable to be defeated. In such a case all that remains in the grantor is the mere possibility of reverter or right of entry on condition broken. The estate will remain defeasible until the condition be performed, destroyed, or barred by the statute of limitations or by estoppel. Memphis & C.R. Co. v. Neighbors, 51 Miss. 412.
We have also said that "a forfeiture clause in deed conveying land for a public purpose with a provision for reversion is strictly construed and mere non-use is not sufficient evidence of complete abandonment to work a forfeiture." Board of Supervisors of Franklin County v. Newell, 213 Miss. 274, 56 So.2d 689 (1952).
In Newell, supra, property had been conveyed to Franklin County, the deed providing that the "land shall revert to the grantor herein, his heirs and assigns when it fails to be used for school purposes." In deciding that no forfeiture had occurred under the facts of that case, this Court stated the general rule: "[I]t is well established that a forfeiture will not be implied unless the evidence to that effect is clear and convincing. *934 19 Am.Jur., Estates, Sec. 65; 4 Thompson, Real Property, Secs. 2044, 2063, 2096; 47 Am.Jur., Schools, Sec. 69."
The Court also said: "[Proof of] an abandonment must be made to appear affirmatively by the party relying thereon and that he has the burden to prove the same by clear, unequivocal and decisive evidence. 1 Am.Jur., Abandonment, Sec. 17."
In Newell, supra, the Court said further: "This is in accord with the general rule that a forfeiture is not incurred by the use of land for another purpose consistent with the purpose specified. 4 Thompson, Real Property, Sec. 2104." Citing Consolidated School District, 1941, 202 Ark. 1074, 155 S.W.2d 353. The Court concluded: "In brief, forfeiture clauses with a reversion of the present type are strictly construed. Mere non-use with nothing more is not sufficient evidence of complete abandonment."
The photographs in the record show that the property in controversy meets accepted definitions of what constitutes a "park." Belhaven Park is a place in a modern city, in the midst of what has been referred to in another context as an "asphalt jungle," providing a sort of oasis, where grass grows and there are trees and plants in their natural state, a place which is accessible to the public, where people may go and enjoy the open air. A park may be as extensive as Yellowstone or Yosemite, or may be as small as Belhaven, but a failure to provide playground equipment or to place picnic tables and benches upon it will not destroy its character as a park. Burnham failed to meet the burden which rested upon him to prove "by clear, unequivocal and decisive evidence" that the city had forfeited its title by a breach of the clause providing for a reverter.
The decree appealed from is supported by the evidence in the record and is affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.