McCRORY SCHOOL DISTRICT *v.* BROGDEN.

5-2039                                    333 S. W. 2d 246

Opinion delivered February 15, 1960.

[Opinion amended March 28, 1960]

*W. J. Dungan,* for appellant.

*Lloyd A. Henry* and *Victor L. Nutt,* for appellee.

CARLETON HARRIS, Chief Justice. This case was originally filed in the Woodruff Chancery Court as an action to quiet title in appellees, but was subequently transferred to Circuit Court, where appellees amended their complaint to ask ejectment. Appellees, trustees of the Harmony Baptist Church, received a quitclaim deed from Ethel L. Patterson, and the heirs of M. H. Patterson, deceased, on July 8, 1958, to the property here in litigation. Appellants, McCrory School District of Woodruff County, and its directors, likewise claim title. The property involved consists of something less than two acres, which was acquired in 1916 or 1917 by the public school district of Patterson, in Woodruff County, as a site for the erection and maintenance of a public school building in which to conduct a public school for the Patterson community. The district, which was known as Patterson School District No. 16, took possession of the land, erected a school building on same, and operated it as a school until this district was consolidated with appellant district.[1] Appellants contend that the district, and its predecessor in title, have held the property adversely since before 1918, and have long since acquired title by adverse possession. Appellees' claim is based upon the contention that the Patterson School District received the 1916 or '17 deed to the premises from Mrs. Ethel Patterson and her husband, and that said deed contained a reversionary clause, which provided that the property would revert to the heirs of the Patterson estate if its use as school property be discontinued. Appellees further contend that the property was no longer being used for the purpose for which it was conveyed, and accordingly had reverted to the Pattersons. Having received a deed from Mrs. Patterson, who held power of attorney to act for the heirs, they assert ownership of the property. The Circuit Court, sitting as a jury, after hearing the evidence, held that the School District was entitled to possession for only so long as the property

[1] Classes were held in the school until sometime in 1955.

was used for school purposes, and that such use had been discontinued. Judgment was entered placing appellees in possession of the premises, and vesting them with title in fee simple. From such judgment comes this appeal, and we are called upon to determine whether there was any substantial evidence upon which the judgment could be rendered.

For reversal, several points are urged, but these will be mainly covered in our discussion of appellants' first contention, *viz.*, that there is not sufficient proof of title in the record to sustain the judgment in ejectment. Of course, it is well established that in ejectment, a plaintiff must recover on the strength of his own title and not on the weakness of the title of his adversary. See *Jackson v. Gregory*, 208 Ark. 768, 187 S. W. 2d 547. Nonetheless, we do not agree with appellants' contention. This litigation probably results from the fact that the original deed to the Patterson School District was lost, and, if placed of record, such record destroyed. The present directors of the School District were unable to state the original source of title, nor was any evidence offered to show the authority for constructing the school building (in 1917) on the land involved herein, though it is obvious that a deed, or permission, must have been obtained from someone, *i. e.*, the board did not just select a location and start building. However, there is potent evidence that the Pattersons owned this land at that time. Tom Chaney identified a certified copy of a warranty deed dated July 15, 1918, wherein Mr. and Mrs. Patterson conveyed property adjacent to the school building to him. The description excepted certain footage, and Mr. Chaney testified that the school building was located on this excepted portion. Mrs. Patterson testified that she and her husband had already deeded the excepted portion to the School District. Roy Coleman, an abstractor of Augusta, testified that the 1917 taxes were assessed in Mr. Patterson's name. Be that as it may, the record clearly reflects that the School Board, in 1935, recognized the Pattersons as its original grantors. At that time, the district desired to build a new school building with the help of the Works Progress Administration. Accord-

ing to Wallace Law of Patterson, who was secretary of the School Board in 1935, the old school building had been condemned, and the Works Progress Administration[2] agreed to help on a new building; the WPA officials desired to examine the deed, which had been lost, and would not construct the building until another deed was obtained. Mrs. Patterson was approached by board members, and agreed to give a second deed to the property, which deed was executed on September 3, 1935, and filed for record on May 16, 1946. The pertinent provisions of the deed are as follows:

"That Ethel L. Patterson, widow of M. H. Patterson, and Ethel L. Patterson, by Power of Attorney for the heirs of the Patterson estate, for and in consideration of the sum of One ($1.00) Dollar in hand paid by the Patterson Special School District, do hereby grant, bargain, sell and convey unto the said Patterson Special School District for use as for a School (said property to revert to the heirs of the Patterson Estate if discontinued as School property) the following lands lying in the County of Woodruff, and State of Arkansas, to-wit:

That part of the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼) of Section Seven (7), Township Seven (7) North Range Two (2) West, now occupied by the building and premises of the Patterson Special School District.

Note this Deed is given in lieu of a former deed given by M. H. Patterson and Ethel L. Patterson, said deed having been lost or misplaced and record destroyed.

To have and to hold the same unto the said Patterson Special School District, so long as this property is used for school purposes."

Of course, as pointed out by appellees in their brief, there was no reason to go to Mrs. Patterson for a second conveyance if the Pattersons had not been the earlier grantors.

---

[2] It is not clear whether the government authority was the Works Progress Administration or the Public Works Administration, since the latter designation is also used during the trial.

Appellants contend that the 1935 deed was void because the description, cited above, was indefinite. In the first place, it would appear that the property could be located from the description given. The testimony reflected that the fence enclosing the school property had been in the same location for as far back as 1918. The fence was certainly a part of the premises. In fact, a surveyor who testified for appellants, when testifying about what property he was surveying, answered, ''The School property, around the school house, the part of land that was enclosed by fence.'' The deed recites the correct quarter - quarter - quarter, section, correct county, and limits the quantity to that occupied ''by the building and premises of the Patterson Special School District.'' As stated in American Jurisprudence, Vol. 16, § 262, p. 585:

''The courts are extremely liberal in construing descriptions of premises conveyed by deed with the view of determining whether those descriptions are sufficiently definite and certain to identify land and make the instrument operative as a conveyance. The purpose of a description of the land, which is the subject matter of a deed of conveyance, is to identify such subject matter; and it may be laid down as a broad general principle that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located.'' A more compelling reason why appellants cannot prevail upon this point is that the board was satisfied with, and accepted the deed; the WPA was apparently satisfied, for it continued with the construction, and the Patterson School District *derived the benefits which were afforded by the execution of the deed.* Having accepted the benefits, the district cannot now be heard to complain that the deed was inadequate or void.

Appellants further call attention to the fact that the reversionary language in the granting clause reads "said property to revert to the heirs of the Patterson estate if discontinued as school *property*", and point out that the building is still being used to store desks and other school furniture.[3] Here again, appellants' contention is not well taken. It is clear from both the granting clause and the *habendum* clause that there was a clear intention of the grantors to create the possibility of reverter, or determinable fee, but we think it immaterial in this instance whether the above phrase controls, or the phrase which appears in the *habendum* clause, "to have and to hold the same unto the said Patterson School District so long as this property is used for school purposes", for the evidence makes manifest that there was no intent by the district to continue to use the building for either purpose. It was stipulated that the School District caused the following notice to be printed in the Arkansas Central Leader on June 26, 1958:

## "NOTICE OF SALE

The McCrory School District No. 12 offers for sale the Patterson School building (does not include land) to be bid on by sealed bids.

All bids must be in the superintendent's office not later than noon, July 9.

The School Board reserves the right to reject any and all bids.

J. L. HOLDER, Pres.

PAUL BRONTE, Sec."

In fact, it appears from the testimony of T. C. Bull, one of the school directors, that the only reason the building had not been sold was because no bid was received.[4]

---

[3] According to Mrs. Patterson, the furniture had been moved out, but school equipment was taken back in when she asserted her claim.

[4] Mr. Bull admitted that discussions had been held with Mrs. Patterson to try and reach an agreement whereby the Board, the church, and Mrs. Patterson would all get some benefit.

Appellants urge that the judgment should be reversed because the power of attorney, relied upon by Mrs. Patterson to execute the 1935 deed to the district, and also the deed to appellees in July, 1958, was not placed in the record. The latter deed recited the date of the power of attorney, and the record book in which it was recorded. Mrs. Patterson, in her testimony, claimed the authority to sign for the five living heirs of her deceased husband, but appellants rightly assert that this was not the best evidence. However, as to the 1935 deed, we have already pointed out that appellants accepted the benefits afforded by that deed, and therefore cannot presently assert its invalidity. Likewise, even if Mrs. Patterson was without authority to execute the 1958 deed on behalf of the heirs, appellants cannot prevail. By the acceptance of the 1935 deed, appellants recognized that Mrs. Patterson held an interest in the property at that time (which is binding on them, even if she held no interest). Here, though the deed provides that the property shall revert to the heirs of the Patterson estate, no interest being expressly reserved by Mrs. Patterson, these words are clearly properly construed as words of purchase, rather than words of limitation, since the condition could (and in fact, did) happen during the lifetime of Mrs. Patterson. The common law rule against perpetuities is applicable in Arkansas, Article II, Section 19, Constitution of 1874. In *Simes and Smith Future Interests,* page 330, paragraph 282, with respect to the possibilities of reverter, it is stated:

"The possibility of reverter differs from the remainder and from the executory interest in that it arises only in the transferor or his heirs, whereas such other interests are always created in persons other than the transferor. Thus, where a person owning land in fee simple absolute conveys an estate in fee simple determinable and also shall pass to some third person, the interest of such third person would be called an executory interest. . . . Many executory interests which follow determinable fees are void under the rule against perpetuities while the possibility of reverter in the transferor is usually held to be not subject to that rule."

In 1 *Property A.L.I.*, § 44, p. 131, under the heading "Interest limited to person other than the conveyor", it is stated:

"When a limitation is otherwise sufficient to create an estate in fee simple determinable, the presence of a further provision that upon the expiration of such estate, the land is to pass to some person other than the conveyor or his heirs, does not prevent the created estate from being an estate in fee simple determinable. Such further provision is often ineffective. When such further provision is ineffective, the limitation has the same effect as if no interest had been attempted in favor of a person other than the conveyee."

Therefore, the creation of the determinable fee was valid, but the gift over to the heirs of the Patterson estate, insofar as Mrs. Patterson's interest was concerned, constituted an executory interest and was void as violative of the rule against perpetuities. Upon the occurrence of the condition set out in the deed (discontinuance of the property for school purposes), Mrs. Patterson became entitled to possession (as against the district). Accordingly, in 1958, Mrs. Patterson had an interest to convey, and she certainly had authority to execute the instrument in her own behalf. A rather interesting discussion of the law relating to "Perpetuities" and "Determinable fees" is found in *Brown v. Independent Baptist Church of Woburn, et al*, 325 Mass. 645, 91 N. E. 2d 922.

To summarize, in seeking the deed from Mrs. Patterson, the Board indicated its belief that its original title to the property had been obtained from the Pattersons, and in fact, the instrument recited that it was given in lieu of an earlier deed. In accepting the deed, the Board was bound by its provisions. The provisions included the reversionary clause.[5] As stated in American Jurisprudence, Vol. 19, § 21, P. 619:

"Estoppel of the grantee of a deed, viewed generally, is of the nature of equitable estoppel rather than

---

[5] Mrs. Patterson testified that in giving the deed in 1935, she was requested by the board members to give such deed minus the reversionary clause, but refused to do so.

technical estoppel by deed, since the estoppel is not predicated primarily on the execution of a formal written instrument which cannot be denied or rebutted, but rather on the inability of a person, in the eyes of the law, to acquiesce in, and enjoy the benefits of, a transaction and at the same time reject the accompanying burdens. A person cannot claim under an instrument without confirming it. He must found his claim on the whole, and cannot adopt that feature or operation which makes in his favor, and at the same time repudiate or contradict another which is counter or adverse to it."

Appellants could only have acquired the property by adverse possession by holding same adversely for more than seven years *after* the holders of the reversionary interest had acquired the right of entry, *i. e.*, for the statutory period *after* the property was no longer used for school purposes.

Judgment affirmed.