**Temple McDONALD and Denton B. Gregory, Plaintiffs-Appellants,**

v.

**SMITH COUNTY BOARD OF EDUCATION, et al., Defendants-Appellees.**

Supreme Court of Tennessee, at Nashville.

Sept. 10, 1984.

Solon Fitzpatrick, Randy Wakefield, Carthage, for plaintiffs-appellants.

H. Douglas Hall, Jacky O. Bellar, Carthage, for defendants-appellees.

OPINION

BROCK, Justice.

This is a declaratory judgment action brought by the plaintiffs, McDonald and

Gregory, against the defendants seeking a declaration that certain land conveyed by the plaintiffs' ancestor to the defendants had reverted to the plaintiffs under the provisions of the instrument of conveyance. The trial court held that a reverter had indeed occurred and awarded full relief to the plaintiffs. On appeal the Court of Appeals affirmed the holding that a reverter had occurred but held that the reverter extended only to the land itself and did not include the value of a school building which defendants had erected on the property. We granted discretionary review.

The critical language of the deed of conveyance is as follows:

"... in consideration of ... Two Thousand Dollars ... we, G.W. Bilbrey and wife, Sarah E. Bilbrey, have ... bargained and sold and ... transferred and conveyed, subject to the limitations hereinafter imposed, unto the County Board of Education of Smith County, Tennessee, and its successors in office a certain tract ... of land located ... in the Fourth Civil District of Smith County, Tennessee, and bound it as follows, to wit:

\*　　\*　　\*　　\*　　\*　　\*

"TO HAVE AND TO HOLD said tract ... of land with the appurtenances, estate, title and interest thereto belonging to the County Board of Education of Smith County, Tennessee, and its successors in office, *for public school purposes* forever.

\*　　\*　　\*　　\*　　\*　　\*

"*As a part of the consideration above stipulated, it is agreed that in the event the grantee should cease to use said property for public school purposes, or abandon said property, same shall revert to their grantors or their heirs and assigns.*"[1] (Emphasis added.)

This conveyance was made in 1949 and served to transfer four acres of land to the defendant School Board for a consideration of $2,000.00. A school building was constructed on the property in 1949 and thereafter various improvements, including the construction of a gymnasium, were made. There is evidence that the cost of the improvements was in excess of $100,000.00. Regular school was conducted on the property through the years from 1949 to August, 1980, when the school, known as Cox-Davis Elementary School, was closed because of a severe decline in enrollment. The Board of Education employed the structures on the property for storage purposes until October, 1980, at which time the Board leased the building on the property to the Cordell Hull Economic Opportunity Corporation for use in its "Head Start" program. The lessee corporation is a nonprofit Tennessee educational corporation.

Included in the evidence at trial was an excerpt from 42 U.S.C. § 2928, enacted as Public Law 93–644, the "Head Start, Economic Opportunity, and Community Partnership Act of 1974." That excerpt is as follows:

" 'A—HEAD START PROGRAMS

" 'FINANCIAL ASSISTANCE FOR HEAD START PROGRAMS

" 'Section 511. The secretary may, upon application by an agency which is eligible for designation as a head start agency pursuant to Section 514, provide financial assistance to such agency for the planning, conduct, administration, and evaluation of a head start program focused primarily upon children from low-income families who have not reached the age of compulsory school attendance which (1) will provide such comprehensive health, nutritional, educational, social, and other services as will aid the children to attain their full potential and (2) will provide for direct participation of the parents of such children in the development, conduct, and overall program direction at the local level.' "

---

**1.** It is conceded that this language created a fee simple determinable. *See* 28 Am.Jur.2d *Estates* § 32 (1966), and cases there cited.

It appears that in the act of Congress just cited the Congress authorized the Secretary of Health, Education and Welfare to designate and fund Head Start agencies in communities throughout the United States.

Head Start is a pre-kindergarten program for 3 to 5 year olds with an extensive educational element as required by Federal regulation. The scheme provides that each Head Start agency develop and administer a Head Start program aimed at providing "comprehensive, health, nutritional, educational, social, and other services" to disadvantaged pre-school children. 42 U.S.C. § 2928 (1976). Head Start programs are free for poverty level children, all handicapped children, and other children on a sliding scale basis. 42 U.S.C. § 2809 (1976).

The educational focus of Head Start is indicated by the program's seven founding goals as they were set forth in the recommendations of its interdisciplinary planning committee appointed by Sergeant Shriver, Director of the new Office of Economic Opportunity, in 1965, as follows:

"(1) Improving the child's physical health and physical abilities.

"(2) Help with the emotional and social development of the child by encouraging self-confidence, spontaneity, curiosity, and self-discipline.

"(3) Improving the child's mental processes and skills, with particular attention to conceptual and verbal skills.

"(4) Establishing patterns and expectations of success for the child that will create a climate of confidence for future learning efforts.

"(5) Increase the child's capacity to relate positively to family members and others, while at the same time strengthening the child's ability to relate positively to the child and his problems.

"(6) Developing in the child and his family a responsible attitude toward society, and encouraging society to work with the poor in solving their problems.

"(7) Increasing the sense of dignity and self-worth within the child and his family." "A Decade of Head Start" by J. Richmond, D. Stipek and E. Ziegler, in *Project Head Start: A Legacy of the War on Poverty*, edited by E. Ziegler and J. Valentine. McMillian Publishing, New York (1979).

It is our conclusion that Head Start directly benefits and enhances the public education process in Smith County so that the use of the instant property for Head Start purposes should be considered a use "for public school purposes" within the meaning of the restriction in the conveyance to the defendants. Therefore, we conclude that this property has not reverted to the heirs of the original grantors under the provisions of the fee simple determinable.[2]

We have considered the cases of *Philadelphia Fed., Etc. v. Board of Ed., Etc.*, 51 Pa.Cmwlth. 296, 414 A.2d 424 (1980) and *Weber v. School Dist. of Philadelphia*, 465 F.Supp. 1371 (E.D.Pa.1979) but consider that although each dealt with "Head Start" in a different context, neither is instructive in deciding the issue before this Court. For instance, in the *Weber* case, the District Judge stated that while Head Start may not be considered a public school for the purpose of extending collective bargaining agreement rights to the staff, it was entirely conceivable that a Head Start program would be treated as a "public school" for other purposes:

"Now it might be that a Headstart program conducted in a public school building, or one conducted with the aid of state subsidies, would be treated as a 'public school' for at least some purposes." 465 F.Supp. at 1379–80.

The judgments of the lower courts are reversed and the complaint is dismissed.

**2.** Like other forfeitures, reverters are not favored and a court of equity will not find one unless the evidence clearly shows that the purpose and spirit of the grant have been violated. 78 C.J.S. *Schools and School Districts* § 254 (1952).

Costs are adjudged against the plaintiffs and sureties.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.