IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 2, 2005 Session

## LILLIAN E. GRIFFIS, ET AL. v. DAVIDSON COUNTY METROPOLITAN GOVERNMENT d/b/a DAVIDSON COUNTY BOARD OF EDUCATION

**Appeal by permission from the Court of Appeals, Middle Section**
**Davidson County Chancery Court**
**No. 01-1282-II    Carol L. McCoy, Chancellor**

---

**No. M2003-00230-SC-R11-CV - Filed May 26, 2005**

---

In 1908, a fee simple determinable estate in real property was conveyed to the Davidson County Board of Education and its successors ("Metro"). The deed required the property to be used "for school purposes" and to be "devoted exclusively to the cause of education." The deed further provided that the property would revert to the grantors or their heirs should the property be "abandoned" for these purposes. In July 2000, the defendant Metro ceased using the property for classroom instruction and administration but continued to maintain the property, to use it to store surplus food service equipment, and to hold it in reserve for possible use in the indefinite future. In April 2001, heirs of the grantors brought suit against Metro, claiming that the property had been abandoned for school purposes, thereby triggering reversion to them. Concluding that there had been no abandonment, the trial court granted summary judgment in favor of Metro. However, the Court of Appeals concluded that the limitations "for school purposes" and the "cause of education" are satisfied solely by classroom instruction. The Court of Appeals thus not only held that Metro had abandoned the property for these limitations, but also granted summary judgment in favor of the nonmovants, the heirs of the grantors. We vacate the Court of Appeals' holding that "school purposes" and the "cause of education" require classroom instruction alone.  We hold that these limitations permit any use that directly benefits and enhances the process of learning and instruction or that directly advances the objective of instructing, training, and rearing. Further, we hold that in a fee simple determinable where the term "abandon" is not otherwise defined, the common law definition of abandonment applies; a complainant therefore must show both intent to abandon for the stated limitations and some external act or omission by which the intent to abandon is effectuated. Whether abandonment has occurred is predominantly a factual determination based upon all the relevant circumstances. In the proceedings below, the parties lacked the benefit of our holding today concerning the legal standard for abandonment; consequently, the factual record relevant to this standard has not been sufficiently developed. We thus vacate both the Court of Appeals' grant of summary judgment in favor of the plaintiffs and the trial court's grant of summary judgment in favor of the defendant. We remand this case to the trial court to allow the parties the opportunity to litigate the case in accord with the legal standard adopted herein.

**Tenn. R. App. P. 11; Judgments of Court of Appeals and Trial Court Vacated;
Case Remanded to the Trial Court**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, J.J., joined.

Karl F. Dean, J. Brooks Fox, and John L. Kennedy, Nashville, Tennessee, for the appellant Metropolitan Government of Nashville and Davidson County.

John W. Barringer, Jr. and Justin D. Wear, Nashville, Tennessee, for the appellees Lillian E. Griffis, Nellie Wheeler, and Audrey Griffis.

Randall G. Bennett and Vickie P. Hall, Nashville, Tennessee, for amicus curiae Tennessee School Boards Association.

**OPINION**

## I.  Factual and Procedural Background

On June 3, 1908, George W. Haley and his wife Sarah Haley donated a one-acre parcel of land located in Davidson County, Tennessee, to the Davidson County Board of Education and its successors.  In addition to conveying the property, the deed imposed restrictions on its use: (1) that the property "is to be devoted exclusively to the cause of education"; and (2) that "when said property is abandoned for school purposes said land reverts to said Haley or his heirs or representatives."  Soon after the conveyance, a facility for Union Hill Elementary School was constructed.  Although in their briefs and oral arguments before this Court the parties stated that classes thereafter began to be held in the facility, the appellate record fails to include evidence concerning the property's use from 1909 to February 2000.[1]

As shown by minutes from meetings of the Metropolitan Board of Public Education, a subdivision of the Metropolitan Government of Nashville and Davidson County (collectively "Metro"),[2] there was discussion in 2000 about whether to close Union Hill due to decreased enrollment.  On or about July 13, 2000, Metropolitan Board director Bill Wise announced the closure of Union Hill as an instructional facility.  Joe A. Edgens, Executive Director of Facilities and

_____

[1]During oral argument, counsel for the plaintiffs stated that only a corner of the Union Hill facility rests on the land at issue; however, in this regard the record contains no information.

[2]Metro is the successor to the Davidson County Board of Education.  In the style of this case, Metro is referred to as "Davidson County Metropolitan Government d/b/a Davidson County Board of Education."

Operations of the Metropolitan Nashville Public Schools, explained that classes were suspended because of declining enrollment. Since then, no classroom instruction or school-sponsored activities have been conducted on the property, and no teachers, administrators or other employees of Metro have worked or maintained offices in the Union Hill facility.

On April 24, 2001—approximately nine months after the closure of Union Hill was announced—the plaintiffs Lillian E. Griffis, Audrey Griffis, and Nellie Wheeler brought suit against Metro, claiming that Metro had abandoned use of the property for school and educational purposes and therefore, as the heirs of George W. Haley, that the property had reverted to them. Metro denied that abandonment had occurred.

Subsequently, Metro moved for summary judgment. In support of this motion, Mr. Edgens testified that, in his opinion, Metro had never ceased using the property for school purposes. First, he stated that Metro has retained the property in its "school property inventory" and has not formally declared it to be "surplus property" for sale or use by another sector of the Metropolitan Government.[3] Second, Metro has continued to maintain the Union Hill facility by retaining utility services and mowing the grass. Third, sometime after classroom instruction was discontinued, Metro began using the Union Hill facility to store surplus food service equipment. Fourth, although Metro has had no definite plans for resuming classroom instruction in the future, Metro asserted that it could possibly do so at some time.

The trial court granted summary judgment on behalf of Metro. The trial court agreed with the parties that the deed conveyed a fee simple determinable estate to Metro and reserved in the Haleys and their heirs the future interest of a possibility of reverter. The court held that reverters are disfavored and are strictly construed; a reverter will not be found to have occurred unless "the evidence clearly shows the purpose and spirit of the grant have been violated." Further, the trial court held that in light of McDonald v. Smith County Board of Education, 675 S.W.2d 704 (Tenn. 1984), and Mahrenholz v. County Board of School Trustees of Lawrence County, 466 N.E.2d 322 (Ill. App. Ct. 1984), "school purposes" means something much broader than "merely instructional purposes" and does not require the actual holding of classes. Finding that Metro's current use of the property did not constitute an "abandonment" for school purposes, the trial court concluded that the property had not reverted.

The Court of Appeals not only reversed the trial court's grant of summary judgment in favor of Metro, but also granted summary judgment in favor of the non-movants, the plaintiffs. Looking to the common definitions of "school" and "education" at the time of the grant and construing the words of the deed as a whole, the Court of Appeals determined that "Mr. Haley's intention in conveying this [p]roperty to Davidson County was served only by the [p]roperty's use as a classroom facility." McDonald was distinguished on the ground that the deed in this case contains additional and more detailed restrictive language than the deed in McDonald. The Court of Appeals concluded

---

[3]A metropolitan ordinance requires a certain administrative process for declaring metropolitan property to be surplus. See Nashville, Tenn., Metropolitan Code § 2.24.250 (2002).

that use of the Union Hill facility to store food service equipment did not comport with school or educational purposes. The intermediate court also considered certain post-judgment facts. On February 24, 2004, Metro received a proposal from an organization named "A Better Way to Learn" to lease the Union Hill facility for preschool instruction and to provide a forum for various education-related activities. However, these facts were considered to be moot because the Court of Appeals determined that the reverter had already been triggered "upon the [p]roperty ceasing to be used as a classroom."

We granted Metro's application for permission to appeal. We also granted the plaintiffs' motion to consider the additional post-judgment fact that The City Paper of Nashville reported on September 15, 2004, that the Metro school board had recommended selling the Union Hill facility.

## II. Analysis

We must determine whether the property in question has been abandoned by Metro for school and educational purposes. This inquiry is necessarily framed by construction of the awkwardly-crafted Haley deed, which provides in relevant part as follows:

> For and in consideration of the sum of one dollar ($1.00) and the interest I have for the education of the children of my neighborhood and community generally, provided however, the same is to be devoted exclusively to the cause of education, I, Geo. W. Haley and wife, and when said property is abandoned for school purposes said land reverts to said Haley or his heirs or representatives, have bargained and sold, and by these presents do transfer and convey unto the said [t]he Davidson County Board of Education, J. Taylor Stratton, Chairman, and their successors in office, a certain tract or parcel of land in Davidson County, State of Tennessee . . . .

In construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances. Collins v. Smithson, 585 S.W.2d 598, 603 (Tenn. 1979); Bennett v. Langham, 383 S.W.2d 16, 18 (Tenn. 1964). Interpretation of a deed is a question of law. Rodgers v. Burnett, 65 S.W. 408, 411 (Tenn. 1901); Mitchell v. Chance, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004). Conclusions of law are reviewed de novo with no presumption of correctness. Presley v. Bennett, 860 S.W.2d 857, 859–60 (Tenn. 1993).

### A. Fee Simple Determinable Followed by Possibility of Reverter

We begin our analysis by classifying the estate conveyed by the Haley deed. The parties conceded and the lower courts agreed that the deed conveyed to Metro a fee simple determinable

estate followed by a possibility of reverter in the Haleys.[4] A fee simple determinable is a fee simple which may endure in the grantee forever, but which is subject to a special limitation that may cause the estate to revert to the grantor. Yarbrough v. Yarbrough, 269 S.W. 36, 37–38 (Tenn. 1925); 28 Am. Jur. 2d *Estates* § 26 (2004). The future interest retained by the grantor of a fee simple determinable is a mere possibility of reverter. Mountain City Missionary Baptist Church v. Wagner, 249 S.W.2d 875, 876 (Tenn. 1952). A fee simple determinable estate terminates naturally and automatically when the property is no longer used as required. Commerce Union Bank v. Warren County, 707 S.W.2d 854, 861 (Tenn. 1986); Williamson v. Grizzard, 387 S.W.2d 807, 809 (Tenn. 1965). Termination is automatic because the limitation forms part of the estate's very nature. See Bailey v. Eagle Mountain Tel. Co., 303 S.W.2d 726, 729 (Tenn. 1957); Mountain City Missionary Baptist Church, 249 S.W.2d at 876; 2 Thompson on Real Property § 20.02, at 618 (David A. Thomas ed. 1994). Thus, termination and corresponding reversion do "not depend upon any positive act by the heirs . . . ." Commerce Union Bank, 707 S.W.2d at 861. The question remaining to be decided in this case is whether Metro has triggered reversion by abandoning the property for "school purposes" and "the cause of education."

### B. School Purposes and the Cause of Education Defined

To be able to determine whether abandonment has occurred, we must first understand the meaning of the special limitations placed upon Metro's estate. The Haley deed contains two express limitations. First, the deed states that the property "is to be devoted exclusively to the cause of education." In a recital of purpose contained in the first clause, the deed further defines this limitation, stating that the property is to be used specifically for "the education of the children of my neighborhood and community generally." Although this initial statement of purpose does not itself impose a limitation, it nevertheless informs our understanding of the limitations otherwise imposed. The intention of a grantor is to be ascertained from the deed as a whole. Collins, 585 S.W.2d at 603. Second, the deed provides that the property "reverts" to the Haleys or their heirs "when said property is abandoned for school purposes." Construed together, these limitations evince the Haleys' intent to allow Metro to use the property only so long as it is used for school purposes and for the cause of educating children in the Nashville area.

The definitions of "school," "education," and other associated terms of the deed are thus

---

[4]We note that the uncertain diction and tangled syntax of the Haley deed raise a question as to the proper classification of the estate conveyed. (See the Appendix to this opinion for a grammatical diagram.) This grant contains ambiguous language strongly indicative of both a fee simple determinable and a fee simple subject to a condition subsequent. "The decision as to just what a grantor or devisor meant by the use of a particular language is always fraught with difficulties." Standard Knitting Mills, Inc. v. Allen, 424 S.W.2d 796, 799 (Tenn. 1967). Further, Tennessee case law has displayed some inconsistency in classifying defeasible fees. See generally Nicholas L. White, Bringing Tennessee into the Twentieth Century Re Possibilities of Reverter, Powers of Termination and Executory Interests When Used as Land Control Devices, 15 Mem. State U. L. Rev. 555 (1985). Nevertheless, throughout the course of this litigation, the parties have agreed that the deed conveyed a fee simple determinable estate, and they have neither raised nor briefed this question on appeal; thus, we do not disturb the parties' and the lower courts' classification.

pivotal to determining whether abandonment has occurred. Words of a deed are to be given their common meaning unless a technical meaning is clearly intended. Hutchison v. Board, 250 S.W.2d 82, 84 (Tenn. 1952). In resorting to extrinsic evidence to determine the meaning of these terms, we place ourselves as nearly as possible in the place of the grantor. See Lea v. Lea, 237 S.W. 59, 64 (Tenn. 1922).[5]

## 1. School Purposes

Several standard turn-of-the-century dictionaries defined "school" in relevant part as a place or institution for instruction, as the assembly of students for instruction, and as the experience of instruction and learning.[6] Although the definition of "school" centers on the assembly of students for instruction and the place, institution, and process of instruction and learning, as used in the deed "school" functions as an adjective modifying the plural noun "purposes." "We do not ask what the word in isolation means, but rather we ask how it is used in the instrument . . . ." Commerce Union Bank, 707 S.W.2d at 860. "Purpose" has been defined as an end or aim to be attained and as an ideal to be pursued.[7] The Haley deed's use of "purposes" in the plural indicates something broader than a singular conception of the aim to be attained. Cf. Orleans Parish Sch. Bd. v. City of New Orleans, 700 So. 2d 870, 874 (La. Ct. App. 1997) ("The phrase 'school purposes,' particularly the use of the plural form of the word 'purposes,' suggests a general category of purposes related to the City's schools . . . .").

---

[5]Notably, according to Gene Pearson, A Short History of Public Education in Tennessee 32 (1960), in order to promote funding and support for public education in Tennessee, beginning in 1906 popular "educational rallies" were held in every county. The Haley deed was executed in 1908.

[6]See An American Dictionary of the English Language 988 (Noah Webster ed. 1899) ("A place or establishment in which persons are instructed in arts, sciences, languages, or any species of learning; or the pupils assembled for instruction. . . . The instruction or exercises of a collection of pupils or students . . . . Any place of improvement or learning."); A Standard Dictionary of the English Language 1597 (Isaac K. Funk ed. 1895) ("An educational institution: in the widest sense including all establishments for systematic instruction of every kind and grade . . . . The place or structure in which the instruction is carried on . . . . Any session or exercise of an institution of learning . . . ."); Webster's Revised Unabridged Dictionary of the English Language 1286 (Noah Porter ed. 1913) ("A place for learned intercourse and instruction; an institution for learning; an educational establishment; a place for acquiring knowledge and mental training . . . . A session of an institution of instruction. . . . [A] body of pupils."); see also 14 The Oxford English Dictionary 631–32 (2d ed. 1989) ("An establishment in which boys or girls, or both, receive instruction. . . . Instruction in, attendance at, a school. . . . A session of school . . . . An institution in which instruction of any kind is given (whether to children or adults).").

[7]See An American Dictionary of the English Language 891 ("That which a person sets before himself as an object to be reached or accomplished; the end or aim to which the view is directed in any plan, measure, or exertion."); A Standard Dictionary of the English Language 1451 ("The idea or ideal kept before the mind as an end of effort or action; plan; design; aim . . . . The particular thing that any object or course of action is intended to effect or attain . . . ."); see also 12 The Oxford English Dictionary 878 ("That which one sets before oneself as a thing to be done or attained; the object which one has in view. . . . The object for which anything is done or made, or for which it exists; the result or effect intended or sought; end, aim.").

Our controlling precedent is McDonald v. Smith County Board of Education, 675 S.W.2d 704 (Tenn. 1984). In McDonald, the grantors conveyed a fee simple determinable estate to a local board of education. The limitation provided that the real property was conveyed "for public school purposes forever" and that "in the event the grantee should cease to use said property for public school purposes, or abandon said property, same shall revert . . . ." Id. at 705.[8] After conducting classroom instruction on the property for many years, the board of education closed the school due to decreased enrollment. Two months later, the school building was leased for use by "Head Start"—a federally-funded pre-kindergarten program aimed at providing "'comprehensive, health, nutritional, educational, social, and other services' to disadvantaged pre-school children." Id. at 705–06. This Court had to determine whether "Head Start" satisfied the "public school purposes" limitation. In holding that it did, we concluded that Head Start "directly benefits and enhances the public education process . . . ." Id. at 706. McDonald thus did not limit the meaning of "public school purposes" strictly to traditional classroom instruction, but rather determined that direct benefit to and enhancement of learning and instruction was sufficient to comport with the deed's special limitation.

Courts in several other jurisdictions have also held that "school purpose" or "school purposes" means something more than classroom instruction alone. See, e.g., McCullough v. Swifton Consol. Sch. Dist., 155 S.W.2d 353, 354 (Ark. 1941); Wilcox County Sch. Dist. v. Sutton, 461 S.E.2d 868, 870 (Ga. 1995) ("'[S]chool purposes' means 'any activity that is necessary in the proper maintenance and operation of a school under our present school system . . . .'") (quoting Bd. of Educ. of Appling County v. Hunter, 10 S.E.2d 749, 750 (Ga. 1940)); Mahrenholz v. County Bd. of Sch. Trs. of Lawrence County, 466 N.E.2d 322, 328 (Ill. App. Ct. 1984) ("[T]he term 'school purpose' does not require the actual holding of classes."); Orleans Parish Sch. Bd., 700 So. 2d at 872–75 ("School purposes" indicates a "general category of purposes related to the City's schools rather than the single specific purpose of an actual school."); Koonz v. Joint Sch. Dist. No. 4, Vill. of Gresham, Shawano County, 41 N.W.2d 616, 619 (Wis. 1950). We agree with the Mahrenholz court's observation that had a grantor intended to limit the use of property to classroom instruction alone, the grantor could have simply stated so explicitly. 466 N.E.2d at 327.

In light of the foregoing analysis, we vacate the Court of Appeals' holding that "school purposes" is limited to classroom instruction alone. We hold that the meaning of "school purposes" as a special limitation in the Haley deed permits any use that directly benefits and enhances the process of learning and instruction. In order to avoid circularity in defining "school purposes" and to capture more aptly the core meaning of "school," we replace "education" as used in McDonald with "learning and instruction."[9] Although "school purposes" is thus not limited to classroom

---

[8]We note that the deed in McDonald contains ambiguities similar to the Haley deed, although there—as here—the parties "conceded that [the deed] language created a fee simple determinable." McDonald, 675 S.W.2d at 705 n.1.

[9]We also note that, as used in McDonald's characterization of "public school purposes," "education" is qualified as "*public* education," 675 S.W.2d at 706 (emphasis added), which limits the scope of "education" to a meaning more closely akin to "public school" with its focus on the assembly of students for state-provided instruction and the state-

instruction alone, this definition sustains the phrase's core thrust of advancing the aim of learning and instruction, which was manifestly the Haleys' intent.

## 2. The Cause of Education

The Haley deed also states that the property "is to be devoted exclusively to the cause of education." "Education" has been defined as the process and result of instructing, training, and rearing, particularly with respect to the intellectual and character development of youth.[10] As used in the Haley deed, "education" is part of a prepositional phrase which modifies the noun "cause"—the "cause of education." "Cause" has been defined as motivation by and espousal of a particular objective and as an enterprise or movement devoted to advancing a particular objective.[11]

Regarding the deed as a whole, devotion of the property to the "cause of education" means that the property is to be used to directly advance the objective of instructing, training, and rearing the youth of Nashville. The "cause of education" has a somewhat broader meaning than "school purposes" insofar as "school purposes" more strongly connotes the place where instruction occurs. By requiring the property to be devoted "exclusively" to the cause of education, the deed prohibits uses inconsistent with this limitation.

---

provided place, institution, and process of instruction and learning.

[10]See An American Dictionary of the English Language 380 ("The bringing up, as of a child; instruction; formation of manners. Education comprehends all that series of instruction and discipline which is intended to enlighten the understanding, correct the temper, and form the manners and habits of youth, and fit them for usefulness in their future stations."); A Standard Dictionary of the English Language 576 ("The process or the result of educating; acquirement by any course of discipline and instruction; the systematic development and cultivation of the mind and other natural powers, and the direction of the feelings, the tastes, and the manners, by inculcation, example, experience, and impression."); Webster's Revised Unabridged Dictionary of the English Language 471 ("The act or process of educating; the result of educating, as determined by the knowledge, skill, or discipline of character, acquired; also, the act or process of training by a prescribed or customary course of study or discipline . . . ."); see also 5 The Oxford English Dictionary 74 ("The process of nourishing or rearing a child or young person . . . . The process of 'bringing up' . . . . The systematic instruction, schooling or training given to the young in preparation for the work of life; by extension, similar instruction or training obtained in adult age. Also, the whole course of scholastic instruction which a person has received."); cf. Boney v. Bd. of Trs. of Kinston Graded Schs., 48 S.E.2d 56, 59–60 (N.C. 1948) (stating that "education" encompasses physical as well as intellectual and moral training).

[11]See An American Dictionary of the English Language 183 ("That which a party or nation pursues; or rather pursuit, prosecution of an object. . . . [T]hat which a person or thing favors, that to which the efforts of an intelligent being are directed . . . ."); A Standard Dictionary of the English Language 302 ("A great enterprise or movement supported by moral reasons and motives; an aim or object that engages the special interest, discussion, or efforts of an individual, association, or party; an important principle or aim . . . ."); Webster's Revised Unabridged Dictionary of the English Language 229 ("The side of a question, which is espoused, advocated, and upheld by a person or party; a principle which is advocated; that which a person or party seeks to attain."); see also 2 The Oxford English Dictionary 1000 ("A fact, condition of matters, or consideration, moving a person to action; ground of action; reason for action, motive.").

-8-

### 3. Summary

We ascertain a grantor's intent from a deed as a whole without disregarding any of its parts. Collins, 585 S.W.2d at 603. Where possible we are to "give effect to its several parts and avoid rejecting any of its provisions, the presumption being that the parties intended every part of the deed to have some meaning." Quarles v. Arthur, 231 S.W.2d 589, 590 (Tenn. Ct. App. 1950). The two limitations contained in the Haley deed, which are indistinguishable except for minor differences in connotation, are appropriately harmonized. Metro has been given the property only so long as its use directly benefits and enhances the process of learning and instruction or directly advances the objective of instructing, training, and rearing the youth of Nashville. Vacating the holding of the Court of Appeals, we hold that neither limitation restricts the property's use solely to classroom instruction.

### C. Abandonment

Having defined the Haley deed's limitations, we now must determine whether Metro has abandoned the property, thereby triggering the reverter clause.

### 1. Abandonment Defined

The deed provides that the property reverts to the Haleys "when said property is abandoned" for the stated limitations. As the lower courts noted, the deed itself does not define abandonment.

The term "abandon" as used in the deed has a longstanding legal definition in Tennessee. This Court has defined abandonment as the "'intentional relinquishment of a known right.'" Carroll County Bd. of Educ. v. Caldwell, 162 S.W.2d 391, 393 (Tenn. 1942) (quoting 1 C.J.S. *Abandonment* § 1 (1936)). More specifically, abandonment of property is defined as "the voluntary relinquishment thereof by its owner with the intention of terminating his ownership, possession and control and without vesting ownership in any other person." Hays v. Montague, 860 S.W.2d 403, 408 (Tenn. Ct. App. 1993) (citing 1 C.J.S. *Abandonment* § 1 (1985)); see 1 Tenn. Jur. *Abandonment* § 2 (2001). To justify finding abandonment of property or a vested right, we have long required there to have been some clear and unmistakable affirmative act indicating an intent to repudiate ownership. Brannon v. Mercer, 198 S.W. 253, 256 (Tenn. 1917); Phy v. Hatfield, 126 S.W. 105, 105 (Tenn. 1910); Cottrell v. Daniel, 205 S.W.2d 973, 975 (Tenn. Ct. App. 1947); see also Boyd v. Hunt, 52 S.W. 131 (Tenn. 1899). Common law abandonment thus has two basic elements: (1) the intent to abandon; and (2) some external act by which the intent to abandon is effectuated. Cottrell, 205 S.W.2d at 975. The act or acts which evince the intent to abandon must have been voluntary. Hays, 860 S.W.2d at 408; see Carroll County Bd. of Educ., 162 S.W.2d at 393. The burden of proving abandonment falls on the party asserting it. Cottrell, 205 S.W.2d at 976.

We hold that the common law definition of abandonment applies where reversion of a fee

simple determinable is based upon abandonment and where the term is not otherwise defined. This holding is consistent with Tennessee precedent. In Humphreys County Board of Education v. Baker, 134 S.W. 863, 865 (Tenn. 1911), *overruled on other grounds by* Pickens v. Daugherty, 397 S.W.2d 815 (Tenn. 1965), this Court considered affirmative acts and intent in determining whether a defeasible fee had been abandoned for school and church purposes. Similarly, in Carroll County Board of Education, a grantee made a common law dedication of real property to the Board of Education and to the public for school purposes. 162 S.W.2d at 392. In determining whether the property had been "abandoned" for school purposes, we applied the common law definition of abandonment as the intentional relinquishment of a known right. Id. at 393.

In determining whether there has been abandonment of property for school-related purposes under a defeasible fee, several other jurisdictions have also applied the common law definition of abandonment. See, e.g., Haw. Commercial & Sugar Co. v. County of Maui, 392 P.2d 302, 306 (Haw. 1964) (defining abandonment for school purposes as physical acts and expressions indicating intent); Bd. of Supervisors of Franklin County v. Newell, 56 So. 2d 689, 693 (Miss. 1952) ("The term 'abandonment' is here used in the general sense of intentional relinquishment of use of the property for school purposes, but the general principles of burden of proof in technical 'abandonment' are analogous; and it is well established that an abandonment must be made to appear affirmatively by the party relying thereon . . . . Abandonment of property for the stated purpose involves both intent and acts."); Harris v. Consol. Sch. Dist. No. 8 C, Dunklin County, 328 S.W.2d 646, 650 (Mo. 1959) (defining abandonment of property as a school site under a fee simple determinable as "'a mixed question of intention and act—the intention to abandon permanently and the physical act of nonuser . . . .'") (quoting Anson v. Tietze, 190 S.W.2d 193, 196 (Mo. 1945)); Bernard v. Bowen, 198 S.E. 584, 585 (N.C. 1938) (defining abandonment of a defeasible fee for school and church purposes as the external act of relinquishment accompanied by the intent to relinquish permanently); County Sch. Bd. of Scott County v. Dowell, 58 S.E.2d 38, 42 (Va. 1950) (defining abandonment of property for school purposes under a fee simple determinable as voluntary relinquishment of possession with intent to end all ownership).

## 2. Whether Abandonment Has Occurred

The inquiry whether abandonment has occurred is predominantly a factual determination based upon all the relevant circumstances. See Coile v. Hudgins, 70 S.W. 56, 57 (Tenn. 1902) ("[A]bandonment is a question of law and fact . . . ."); 1 Am. Jur. 2d *Abandoned, Lost, and Unclaimed Property* § 41 (2004) ("Abandonment is generally said to be a matter of fact proper for the decision of the jury, to be ascertained from a consideration of all the facts and circumstances of the case.").

Further, in determining whether abandonment has occurred under a fee simple determinable, judicial disfavor of forfeiture comes into play. Although courts disfavor the placing of restrictions on the fee and are slow to infer the existence of restrictions from ambiguous language, such restrictions are valid and, where legal, will be enforced. Hall v. Hall, 604 S.W.2d 851, 856 (Tenn.

1980).  Nevertheless, we have classified the reverter of a fee simple determinable estate as a forfeiture, McDonald 675 S.W.2d at 706 n.2, which thus is to be strictly construed, Wells v. McCanless, 198 S.W.2d 641, 643 (Tenn. 1947).

On or about July 13, 2000, Metro ceased using Union Hill as an instructional facility due to declining enrollment.  Since then, no classroom instruction or school-sponsored activities have been conducted on the property, and no teachers, administrators or other employees of Metro have worked or maintained offices in the Union Hill facility.  However, Metro has used the property to store surplus food service equipment.

On the one hand, the plaintiffs contend that the reverter clause was triggered on or about July 13, 2000, when Metro closed the Union Hill facility.  Under the plaintiffs' analysis, once closure had occurred Metro would have no time whatsoever to ponder future conforming use of the property.  On the other hand, Metro argues that it can hold the property indefinitely in idle reserve without triggering the reverter, as shown by the following exchange during oral argument between Justice Anderson and counsel for Metro:

> Justice Anderson: In this case as I understand it, this school was closed because of declining enrollment.  Is it your position that the Metropolitan Government can wait ten years, twenty years until there are children in that area that need a school?
>
> Counsel for Metro: Under the wording of the reversionary clause, yes.  Because it is not abandoned for school purposes . . . .
>
> Justice Anderson: How long then?  Thirty years?
>
> Counsel for Metro: Yes, it could be.
>
> Justice Anderson: Forty?
>
> Counsel for Metro: Yes, it could be.
>
> Justice Anderson: Fifty?
>
> Counsel for Metro: Yes.
>
> Justice Anderson: One-hundred?
>
> Counsel for Metro: Yes. . . .

Metro contends that disuse of the property for instruction and affirmative use for storage does not amount to abandonment because it has never formally declared the property to be surplus and because it might possibly resume classroom instruction at the Union Hill facility sometime in the

future. In other words, Metro claims that it has not manifested the intent to abandon the property. As stated above, a finding of abandonment requires evidence of both action and intent.

The mere nonuse of a defeasible fee for stated purposes does not necessarily effect an abandonment. See Humphreys County Bd. of Educ., 134 S.W. at 865. Although in Humphreys County Board of Education we applied the common law elements of abandonment to reversion of a defeasible fee, subsequent Tennessee case law has not directly addressed this issue; consequently, in the discussion that follows we adduce cases from other jurisdictions which have specifically developed this area of law.[12] The Missouri Supreme Court has explained that an abandonment clause "necessarily implies a thought and intent of permanency in the change. No one could well claim that a cessation of classes for a day, a week, a month, or even for a term, would effect a reverter, if they were to be resumed thereafter." Harris, 328 S.W.2d at 651. That is to say, it would be unreasonable to infer the intent to abandon for school purposes merely, for example, from a school's temporary closure during summer recess or for renovation of school facilities. Cf. Withers v. Pulaski County Bd. of Educ., 415 S.W.2d 604, 606 (Ky. Ct. App. 1967) (stating that the deed conveying a fee simple determinable for use as a school "surely contemplated that the school authorities should have a reasonable period of time in which to effect a transition of school uses"); Clark v. Jones, 144 P.2d 498, 500 (Or. 1943) (holding that "temporary suspension" of the use of property for school purposes occasioned by the consolidation of school districts "does not warrant a reasonable inference of abandonment.").

Yet nonuse is competent evidence of abandonment, 1 Am. Jur. 2d *Abandoned, Lost, and Unclaimed Property* § 44 (2004), particularly where an affirmative requirement for use has been placed on a fee simple determinable. Although time is not an essential element of abandonment, time is relevant insofar as it indicates intent. See Cottrell, 205 S.W.2d at 975. Compare Dvorak v. Sch. Dist. Township of Dodge of Guthrie County, 22 N.W.2d 238, 239–40 (Iowa 1946) (holding that six years of nonuse for school purposes amounted to an abandonment) and Ludtke v. Compound Sch. Dist. No. 5, Town of Lima, Rock County, 16 N.W.2d 562, 564 (Wis. 1944) (holding that over three years of nonusing property for a school house at least two months per year amounted to an abandonment) with Withers, 415 S.W.2d at 605–06 (holding that twenty-six days of nonuse alone "was not enough to prove that a school was no longer 'kept in said house.'"). Whether nonuse of a fee simple determinable amounts to an omission manifesting the intent to abandon depends on whether such intent may reasonably be inferred from all the circumstances.

We must therefore examine all the circumstances to determine whether it may reasonably be inferred that Metro has manifested the intent to abandon the property for school purposes and the cause of education. It is undisputed that since July 2000, Metro has not used the property for classroom instruction and administration. Metro argues that because it has never formally declared the property to be surplus as required by local ordinance, see Nashville, Tenn., Metropolitan Code

---

[12]The common law of abandonment in Tennessee has largely developed with respect to other kinds of property interests, such as personal property and easements. Our holding today is limited specifically to the context of defeasible fees.

§ 2.24.250 (2002), it has not manifested the intent to abandon. However, the lack of formal declaration as surplus is merely one factor among the total circumstances.

> Proof of intention to abandon is, of necessity, largely circumstantial. It may be inferred from the acts and conduct of the owner, which are clearly inconsistent with an intention to continue the use of the property, and from the nature and situation of the property, without the positive testimony of the owner in affirmation of the fact.

1 Am. Jur. 2d *Abandoned, Lost, and Unclaimed Property* § 43 (2004). To require a formal declaration of abandonment could allow the holder of a defeasible fee to circumvent restrictions indefinitely simply by refusing or neglecting to make such a declaration. Cf. Steel v. Rural Special Sch. Dist. No. 15, 20 S.W.2d 316, 317 (Ark. 1929) ("It was not necessary to show official action by the board declaring the property abandoned [for school and church purposes] to show abandonment, which was done by the undisputed evidence showing the school was moved out and not longer held on the premises . . . ."); McDougall v. Palo Alto Unified Sch. Dist., 28 Cal. Rptr. 37, 47 (Cal. Dist. Ct. App. 1963) ("We need not explore the niceties of whether the school board did or did not formalize and record an intent to abandon" a defeasible fee where the property had been actually disused for school purposes for almost twenty years.), *overruled on other grounds by* O'Connor v. O'Leary, 56 Cal. Rptr. 1 (Cal. Dist. Ct. App. 1967).

Metro further contends that by continuing to maintain the property and holding it in reserve for possible use for classroom instruction in the indefinite future, Metro has not manifested the intent to abandon the property for school purposes and the cause of education. Metro's Executive Director of Facilities and Operations testified that Metro has no specific plans for the property's future instructional use and that the property could remain vacant indefinitely. As cases from other jurisdictions instruct, coupled with a substantial period of actual disuse, the lack of definite, bona fide plans for conforming use in the reasonably imminent future can tend to show the intent to abandon property for school purposes and the cause of education. See Withers, 415 S.W.2d at 606 ("[A]n indefinite, informal intent to use the building for a school at some unfixed future time could not neutralize the forfeiting effect of an actual nonuse for a period of substantial duration."); Harris, 328 S.W.2d at 651 (Although holding property in reserve "with the considered possibility of a renewed use for classes" may itself run counter to an intent to abandon, "such a state of affairs cannot go on indefinitely. We shall not presume to fix any date when abandonment would take place. A school district may not . . . retain title to property under such a conveyance unless it is done in good faith and with some reasonable purpose and intent."); Craig v. Unknown Heirs, 358 P.2d 835, 840 (Okla. 1961) (noting, where property had been held in reserve for two years for possible future use as a school, that "the evidence shows no definite intention or contemplation[ ] to use the land for any purpose connected with maintaining a public school"); Town of E. Greenwich v. Gimmons, 84 A. 1008, 1010 (R.I. 1912) (holding that temporary cessation of classroom instruction while harboring a definite intention for future use as soon as it would be expedient and proper was not an abandonment for school purposes).

Metro's sole use of the Union Hill facility during the disputed period has been for storage

of surplus food service equipment. As Metro accurately points out, in <u>McDonald</u> the property at issue was used for storage for two months between closure of the school and lease of the facility to a Head Start program. 675 S.W.2d at 705. Although in <u>McDonald</u> we attached little significance to this fact and instead focused our analysis on whether Head Start was commensurate with school purposes, <u>see id.</u> at 705–06, <u>McDonald</u> implicitly supports the proposition that temporary use of property for storage while taking a reasonable time to decide upon future use does not necessarily effect an abandonment.

Whether storage is use of property for school purposes or the cause of education depends on all the circumstances. <u>Compare</u> <u>McCrory Sch. Dist. of Woodruff County v. Brogden</u>, 333 S.W.2d 246, 249–50 (Ark. 1960) (holding that storage of desks and other school furniture was an abandonment for school purposes and use as school property), <u>Craig</u>, 358 P.2d at 839–41 (concluding that holding property in idle reserve and using it to store classroom seats did not comport with school purposes), <u>and</u> <u>Putney v. Sch. Dist. No. 4 of Town of Brookfield</u>, 255 N.W. 76, 77 (Wis. 1934) (holding that maintaining property in idle reserve and using it for storage was an abandonment for school purposes) <u>with</u> <u>Mahrenholz v. County Bd. of Sch. Trs. of Lawrence County</u>, 544 N.E.2d 128, 130 (Ill. App. Ct. 1989) (stating that storage of currently usable school materials comports with a school purpose, while storage of obsolete materials does not), <u>Orleans Parish Sch. Bd.</u>, 700 So. 2d at 874–75 (holding that good faith use to store school personal property was not an abandonment for school purposes), <u>and</u> <u>Ballantyne v. Nedrose Pub. Sch. Dist. No. 4, Ward County</u>, 177 N.W.2d 551, 553–54 (N.D. 1970) (holding that storage of school equipment and supplies was not an abandonment for school purposes).

Unfortunately, lacking the benefit of our holding today, the parties have not sufficiently developed the record in this case for us to make a definitive determination whether, for purposes of summary judgment, abandonment has occurred. For example, the record does not show on what date the Union Hill facility began to be used for storage; consequently we are unable to ascertain whether the property was totally unused for a substantial duration. Counsel for the plaintiffs also suggested during oral argument before this Court that only a corner of the Union Hill facility rests on the real property at issue, thereby raising a variety of material questions concerning which the appellate record contains no information. Similarly, although the record shows that on February 24, 2004, "A Better Way to Learn" proposed to lease the Union Hill facility for school-related activities, the record does not make clear whether Metro had been actively seeking a tenant for such use. The plaintiffs have further submitted the post-judgment fact that <u>The City Paper</u> of Nashville reported on September 15, 2004, that the Metro school board has recommended selling the Union Hill facility. Such factors are material to determining whether the storage of surplus food service equipment is an affirmative nonconforming use, whether Metro's sole intent since closure of Union Hill has been to hold the property in idle reserve for uncertain possible future use, and whether Metro has manifested some definite, bona fide plan for conforming use in the reasonably imminent future which has been involuntarily frustrated. We therefore vacate both the Court of Appeals' holding that abandonment has occurred and the trial court's holding to the contrary.

**D. Summary Judgment**

Summary judgment requires a demonstration that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). On appellate review of a summary judgment motion, we review the record de novo, according no presumption of correctness to the trial court's determination. Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001). Further, we must view the evidence in a light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor and discarding all countervailing evidence. Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998). Summary judgment is inappropriate unless the facts and the conclusions to be drawn from them permit a reasonable person to reach only a single conclusion. Pero's Steak & Spaghetti House v. Lee, 90 S.W.3d 614, 620 (Tenn. 2002).

Summary judgment may be granted in favor of a nonmovant. Thomas v. Transp. Ins. Co., 532 S.W.2d 263, 266 (Tenn. 1976). Such action should be taken only in rare cases and with meticulous care. Id. Further, the party against whom summary judgment is to be rendered must have had notice and a reasonable opportunity to respond to all the issues to be considered. See id.; March Group, Inc. v. Bellar, 908 S.W.2d 956, 959 (Tenn. Ct. App. 1995).

This case is not one of those rare cases in which a grant of summary judgment in favor of the nonmovant is appropriate. Although Metro has had notice and a full opportunity to respond to the issues under consideration, see Thomas, 532 S.W.2d at 266; March Group, Inc., 908 S.W.2d at 959, during the proceedings below the parties lacked the benefit of our holding concerning the legal standard for abandonment. Consequently, the factual record has not been sufficiently developed for us to make a meticulously careful legal determination, see Thomas, 532 S.W.2d at 266, which is clearly the sole conclusion at which we can rationally arrive, see Pero's Steak & Spaghetti House, 90 S.W.3d at 620. We similarly deem it inappropriate to grant summary judgment on behalf of the movant, Metro. Accordingly, we vacate both the Court of Appeals' grant of summary judgment in favor of the plaintiffs, Lillian E. Griffis, Audrey Griffis, and Nellie Wheeler, and the trial court's grant of summary judgment in favor of the defendant, Metro, and we remand this case to the trial court for further proceedings consistent with this opinion.

**III. Conclusion**

The deed in this case conveyed to Metro a fee simple determinable estate followed by a possibility of reverter in the Haleys and their heirs. We vacate the Court of Appeals' holding that the limitations imposed on the estate—for "school purposes" and devotion to the "cause of education"—require classroom instruction alone. We hold that these limitations permit any use that directly benefits and enhances the process of learning and instruction or that directly advances the objective of instructing, training, and rearing. Further, we hold that to determine whether the property at issue has been "abandoned" for the stated limitations, the common law definition of abandonment applies. In order to prove abandonment under a fee simple determinable, the

complainant must show both the intent to abandon for the stated limitations and some external act or omission by which the intent to abandon is effectuated. Whether abandonment has occurred is predominantly a factual determination based upon all the relevant circumstances.

During proceedings below, the parties lacked the benefit of our holding today concerning the legal standard for abandonment. Consequently, the factual record has not been sufficiently developed for us to evaluate definitively Metro's summary judgment motion. We therefore vacate both the Court of Appeals' grant of summary judgment in favor of the nonmovants, Lillian E. Griffis, Audrey Griffis, and Nellie Wheeler, and the trial court's grant of summary judgment in favor of the movant, Metro. We remand this case to the trial court for further proceedings consistent with this opinion, to allow the parties the opportunity to litigate the case in accord with the legal standard which we have adopted herein. Costs of this appeal are taxed one-half to the plaintiffs, Lillian E. Griffis, Audrey Griffis, and Nellie Wheeler, and one-half to the defendant Metro, for which execution may issue if necessary.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE

# Appendix: Diagram of the Conveyance

| Subject | Predicate | | | |
|---|---|---|---|---|
| | **Verb** | | **Object** | **Indirect Object** |
| I, Geo. W. Haley and wife | have bargained and sold | and do transfer and convey | a certain tract or parcel of land in Davidson County, State of Tennessee | unto the said The Davidson County Board of Education, J. Taylor Stratton, Chairman, and their successors in office |
| | **Modifier** | | | |
| | For and in consideration of the sum of one dollar ($1.00) and the interest I have for the education of the children of my neighborhood and community generally | by these presents | | |

| Conjunction | provided however |
|---|---|

| Subject | Predicate | |
|---|---|---|
| | **Verb** | **Indirect Object** |
| the same | is to be devoted | to the cause of education |
| | **Modifier** | |
| | exclusively | |

| Conjunction | and |
|---|---|

| Subject | Predicate | |
|---|---|---|
| | **Verb** | **Indirect Object** |
| said land | reverts | to said Haley or his heirs or representatives |
| | **Modifier** | |
| | when said property is abandoned for school purposes | |